Jacqueline PIVA, on behalf of herself
and others similarly
situated, Plaintiff,

v.

XEROX CORPORATION, Defendant.

No. C–73–1337 WTS.

United States District Court,
N. D. California.

Dec. 9, 1975.

Aaron Paul, Barrett, Ferenz, Bramhall, Paul & Nolan, Oakland, Cal., Paul J. Spiegelman, Specter & Spiegelman, Berkeley, Cal., for plaintiff.

Richard Haas, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an employment discrimination action invoking jurisdiction under 28 U.S.C. §§ 1343(4), 2201, and 2202, and 42 U.S.C. § 2000e–5(f), brought under Title VII of the Civil Rights Act of 1964 (hereinafter, Title VII), 42 U.S.C. § 2000e et seq., by plaintiff Jacqueline R. Piva, a former employee of defendant Xerox Corporation, on behalf of herself and all other women similarly situated, alleging discrimination on the basis of sex and seeking injunctive and declaratory relief as well as reinstatement and an award of back pay.

The case is now before the Court on plaintiff's motion for a determination that the action is maintainable as a class action (Doc. No. 47).

## THE RECORD

The evidentiary record before the court on the pending motion consists of the unverified complaint along with evidentiary matter outside the pleadings as follows:

Plaintiff's certificate of counsel with attached Exhibits 1A, 1B, 2–4, 5A, 5B (attached to Doc. No. 71);

Defendant's affidavit of Middlesworth with attached Exhibits A–D and E1–E5 (Doc. No. 63); affidavits of Mackin and Orlando (Doc. Nos. 64 and 65); affidavit of Haas with attached Exhibits 1, 6, 16, 20, 21, 24, 29, 30, 31, 32 and 33 from the deposition of plaintiff Piva (Doc. No. 66).

## THE COMPLAINT

The complaint alleges, in substance and effect, that plaintiff Piva was employed by defendant Xerox from May 1, 1964 until June 30, 1970, when plaintiff was discharged by defendant; that at the time plaintiff was discharged, her job title was "Account Representative"; that defendant has generally discriminated against its "female sales personnel" by denying them pay equal to that earned by men in four specific sales positions and by refusing to hire, assigning, transferring, laying off, demoting and discharging said personnel on a discriminatory basis because of their sex; that defendant has specifically discriminated against plaintiff Piva by (a) paying her less than male employees for the same or less difficult work, (b) requiring her to perform at a higher level than similarly trained and classified mail employees, and (c) discharging her because of her sex.

## DEFINITION OF THE PROPOSED CLASS

Plaintiff Piva seeks to represent a class of plaintiffs defined as follows:

"All women who are now, would have been, have been, or may in the future be, employed by defendant Xerox Corporation in the facilities and/or activities formerly known as the "Western Region Business Products Group" (whose operations and/or activities have in the past, are in the present, and will in the future be part of Xerox's Western Regional Operations) in sales and sales management positions and who have been, are being, or may in the future be adversely affected by the following unlawful and sexually discriminatory practices engaged in by the defendant:

1) Failing to recruit and hire women to sales and sales management positions because of their sex;

2) Segregating women into office and clerical positions and Customer Representatives because of their sex;

3) Denying women training for sales and sales management positions because of their sex;

4) Failing to promote women to sales and sales management positions because of their sex;

5) Paying women in sales positions less than males in the same position because of their sex;

6) Terminating women from sales positions because of their sex;

7) Delegating unguided authority to the all male supervisory force to engage in discriminatory practices against women seeking opportunities in sales and sales management positions;

8) Failing to take affirmative action to overcome their past exclusion of women from sales and sales management positions;

9) Otherwise discriminating against women because of their sex and denying them equal opportunities and equal terms and conditions of employment in sales and sales management positions." (Doc. No. 70).

## EVIDENTIARY RECORD

The evidentiary record outside the pleadings shows in substance that the "Western Region" of Xerox is an operational area encompassing 10 western states [1] and approximately 25 Branch Offices of Xerox; that, in ascending order of responsibility, the "sales" and "sales management" positions within each of Xerox's Branch Offices are the following: Customer Representative,[2] Area Sales Representative (formerly known as Marketing Team Representative); Sales Representative, Account Representative (now abolished), Area Sales Manager, Branch Sales Manager; that, in April 1964, plaintiff Piva was hired by Xerox as a Customer Representative in its Oakland Branch Office; that, in January 1966, plaintiff was promoted to the position of Marketing Team Representative, but in April 1966, her request to be transferred back to the position of Customer Representative was granted; that, during the period from November 1966 to October 1967, plaintiff was promoted in succession to the positions of Marketing Team Representative, Sales Representative, and Account Representative; that, at the time plaintiff was promoted to each of those three positions, she became the first woman ever to be employed in the position by Xerox; that, in 1967 and 1968, Xerox on several occasions recognized plaintiff's good performance as an Account Representative by selecting her for membership in Xerox's "Par Club"—a group of sales em-

---

1. Xerox's "Western Region" includes the following states: Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah and Washington.

2. There is some dispute between the parties as to whether "Customer Representative" is technically a "sales" position. Plaintiff contends it is, or should be so considered; defendant contends that it is not, as evidenced by the fact that compensation for the position is by straight salary, without the commissions or bonuses which are the earmarks of "sales" positions.

ployees selected on the basis of their sales performance; that, in November 1969, Xerox found plaintiff's performance to be "unacceptable" and placed plaintiff on probation; that, in April 1970, Xerox found plaintiff had not met the terms of her probation and, in June 1970, Xerox offered plaintiff a choice between demotion to the position of Customer Representative or termination; that, on June 16, 1970, plaintiff was terminated by Xerox; that, during the time plaintiff was employed at Xerox, she was allegedly denied sales training and did not attend a single training course, whereas the 33 male sales employees in her Branch Office attended a total of 49 training courses; that, in 1970 when plaintiff was terminated, she was the only one of 62 Account Representatives in the Western Region to be terminated for unsatisfactory performance; that, in 1970, 13 of the 721 Xerox employees (1.8%) in sales positions in the Western Region were women; that, in 1973, 24 of the 505 employees (4.8%) in sales positions in the Western Region were women; that, during the period from 1969 to 1973, 58 of the 1541 employees (3.8%) hired for or promoted to sales positions in the Western Region were women; that, as of 1973, no women had been promoted to the lowest sales management position (Area Sales Manager).

## PROCEDURAL OPPOSITION TO CLASS CERTIFICATION

In opposition to the instant motion for class certification, defendant raises two preliminary contentions: first, that because the initial charge of discrimination filed by plaintiff with the EEOC was a "personal" rather than a "class" charge, plaintiff cannot now represent class members whose claims have not properly been before the EEOC and with respect to which defendant has had neither proper notice nor opportunity to conciliate; and second, that both the state statute of limitations and the Title VII statutory limitations period for filing legal actions after the EEOC's issuance of a "Right-to-Sue" letter prevent plaintiff from representing members of the amended proposed class who were not also members of the original proposed class as defined in the complaint.

With respect to the first contention, plaintiff filed a charge of discrimination with the EEOC on August 5, 1970, which stated:

"I believe I was paid less than male employees classified in the same position I held throughout my employment with Xerox Corporation. In addition, I was discharged on June 16, 1970, because of my sex."

■ It is well-settled that a single plaintiff who has filed a charge of discrimination with the EEOC has standing to bring a class action on behalf of other persons similarly situated, whether or not those other persons have filed charges with the EEOC, and there is no statutory or case law requirement that the single charge be labeled or otherwise denominated a "class" charge. *Oatis v. Crown Zellerbach Corporation,* 398 F.2d 496 (5th Cir. 1968); *Bowe v. Colgate-Palmolive Company,* 416 F.2d 711 (7th Cir. 1969).

■ It is further settled that the allegations of a Title VII complaint may go beyond the allegations contained in the original EEOC charge, to the extent that the allegations of the complaint encompass "any kind of discrimination like or related to the allegations contained in the charge" or are limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of [a] charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970); *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569 (9th Cir. 1973).

■ We conclude that, as a matter of law, a Title VII EEOC charge need not necessarily be framed in class terms in order to permit the plaintiff who filed the charge to bring a class action. We further conclude in the instant action, however, that the defendant should reasonably have expected the EEOC to examine class aspects of plaintiff's individual charge, and that, inasmuch as de-

fendant was served with the original complaint in August 1973, and a copy of the complaint together with a request for continued EEOC attempts at conciliation were mailed by plaintiff to the EEOC in that same month, defendant is hereby estopped from objecting now, for the first time, that it has been given improper notice and insufficient opportunity to conciliate class claims contained in the complaint.

With respect to defendant's second contention, the court notes that the amended proposed class is more inclusive than the original proposed class defined in the complaint in the following respects: it expands the class from the State of California to Xerox's Western Region; it is not restricted to practices relating to four specific sales positions; and it includes women who "would have been" employed by Xerox.[3]

Defendant concedes that the claims of the plaintiff and the original proposed class have been properly brought within the applicable limitations periods, but contends that the claims of the "new" class members of the amended proposed class have not been so brought.

Without further examining the question of whether the state statute of limitations is applicable to Title VII actions,[4] or whether the Title VII limitations period of Section 2000e–5(f)(1) is jurisdictional as to the claims of all potential class members, this court concludes that the permissible scope of a Title VII class should be determined pursuant to the specific requirements of Rule 23, Fed.R.Civ.Pro. (infra), and not pursuant to overly technical applications of procedural limitations time periods.

As the Supreme Court has stated: "statutory limitations periods are 'designed to promote justice by preventing surprises . . . The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation . . .'" *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

While the scope of plaintiff's amended proposed class may be otherwise objectionable, we do not believe it to be objectionable in the instant action upon grounds of surprise.

## RULE 23, FED.R.CIV.PROC.

### I. Rule 23(a)

The maintainability of a Title VII class action is determined, as in all other actions, pursuant to Rule 23, Fed.R.Civ. Proc. The "pre-requisites" to a class action are set forth in Rule 23(a)(1)–(4):

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In support of the instant motion for class certification, plaintiff contends that each of the requirements of Rule 23(a) is satisfied by the proposed class.

In opposition, defendant contends that, inasmuch as plaintiff was actually employed in sales positions for more than four years, she is not a member of the proposed class insofar as it includes persons who have been unable to obtain, or deterred from seeking, a sales position;

---

**3.** The proposed class defined in the original complaint was as follows: ". . . all women who are now, have been or will be employed by Xerox Corporation (Business Products Group) at its offices throughout the State of California as sales representatives, account representatives and area sales managers or who have applied for or trained for such positions and been turned down, who have been denied, or in the future will be denied, equal employment opportunities by said defendant on the ground of their sex." (Complaint, ¶ V).

**4.** See this court's previous Memorandum of Decision in this action, filed May 1, 1974.

that plaintiff's claims in the complaint are "individual" and are neither "common" nor "typical" of the claims of the proposed class; that plaintiff's failure to diligently prosecute the instant action demonstrates plaintiff's inadequacy as a class representative; that incumbent and non-incumbent employees included in the proposed class have conflicting interests.

### Rule 23(a)(1)—Numerosity

It is undisputed by defendant that the proposed class satisfies the numerosity requirement of Rule 23(a)(4); indeed, defendant contends that the effect of certifying the class proposed by plaintiff would be to join the claims of "thousands" of women, thereby expanding the action to unmanageable proportions. We conclude, therefore, that, subject to reconsideration if the scope of the proposed class is hereinafter otherwise limited, the proposed class satisfies the requirement of numerosity.

### Rule 23(a)(2) and (3)

The Rule 23(a)(2) and (3) requirements of commonality and typicality are so closely related that, for the purposes of deciding the instant motion, they will be considered together.

Although these two requirements are primarily determinative of both *whether* a class should be certified and, if so, *what* class should be certified, unfortunately, neither the United States Supreme Court nor our own Ninth Circuit Court of Appeals has yet rendered a decision relating to the proper application of either of these requirements in a Title VII action. Other Courts of Appeal, however, have rendered such decisions, and we proceed herein to an examination of the case law as developed by those courts.

The first Title VII class determination cases arose in the Fifth Circuit, wherein the Court of Appeals noted the broad public policy embodied by Title VII and declared that actions brought thereunder are "perforce" class actions which are "by definition" based upon "class wrongs". *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir. 1968); *Jen-*

*kins v. United Gas Corp.,* 400 F.2d 28 (5th Cir. 1968). In specifically applying the commonality and typicality requirements of Rule 23(a) in these actions, the Fifth Circuit adopted a so-called "across the board" approach, whereunder an employer's underlying policy of discrimination is viewed as a fact sufficiently common to and typical of employment claims which are based upon different manifestations of that single underlying policy to permit the joinder of all such claims in a class action.

Thus, in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969), the court held that the claim of a former black employee who alleged he had been discriminatorily discharged was common not only to the claims of other black employees, but also to the claims of all other black employees who alleged discrimination with respect to hiring, promotion and the maintenance of facilities, as well as with respect to firing. As stated in *Johnson, supra* :

> "While it is true . . . that there are different factual questions with regard to different employees, it is also true that the 'Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.' "

The Fifth Circuit continues to apply this "across the board" approach in deciding Title VII class certification questions, and the broad scope of the classes certified thereunder is indicated in several Fifth Circuit cases decided since *Johnson. Carr v. Conoco Plastics, Inc.,* 423 F.2d 57 (5th Cir. 1970); *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40 (5th Cir. 1974); *Jack v. American Linen Supply Co.,* 498 F.2d 122 (5th Cir. 1974); *Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974).

Beyond the Fifth Circuit, the Courts of Appeal in other circuits have either expressly or effectively adopted this liberal "across the board" approach in certifying Title VII class actions, as indicated by the following most recent decisions.

The Third Circuit, in *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir. 1975), held that it was not an abuse of discretion for a district court to permit two former women employees, who were employed as "technical" employees and who alleged discrimination in hiring and promotion, to represent a nationwide class consisting of all former, present and future female "technical" employees of the defendant. The court in *Wetzel* further held that, even if the plaintiffs voluntarily terminated their employment, and therefore were not entitled to reinstatement, they could still properly represent the proposed class.

In *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975), an action brought by a group of seven present and former employees consisting of six blacks, a woman, and an Hispano-American who were employed in four different categories of employment by the defendant, the Tenth Circuit held that it was error for the district court to deny class certification by dividing the class into narrow subclasses, each of which failed to satisfy the numerosity requirement of Rule 23(a)(1). In reversing the district court, the Court of Appeals held that the plaintiffs could represent a class consisting of all present and former black, female and Hispano-American employees, without limitation as to job position.

The Fourth Circuit, in *Barnett v. W. T. Grant Co.,* 518 F.2d 543 (4th Cir. 1975), held that a present black employee who alleged that he had been discriminatorily denied promotion but whom the court found had lawfully been denied promotion, could properly represent a class consisting of all other blacks who had suffered from different employer practices which were motivated by the same policy of discrimination. The Court in *Barnett* held that it was error for the district court to limit the class to include only those other black employees who had unsuccessfully applied for the same position to which plaintiff sought promotion.

So uniformly have the circuit courts liberally applied the requirements of Rule 23(a)(2) and (3) in favor of class certification, that we are able to find only six Title VII cases wherein a circuit court has either affirmed a district court's denial of a class certification or narrowed a district court's definition of a class. Further, we find each of these circuit court decisions to be either factually distinguishable from the instant action or of questionable continued authority in light of the subsequent decisions. *Brito v. Zia Co.,* 478 F.2d 1200 (10th Cir. 1973); *Hill v. American Airlines, Inc.,* 479 F.2d 1057 (5th Cir. 1973); *Air Line Stew. & S. Assoc., Local 550 v. American Airlines, Inc.,* 490 F.2d 636 (7th Cir. 1973); *EEOC v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975); *Heard v. Mueller & Co.,* 464 F.2d 190 (6th Cir. 1972); *Wells v. Ramsay, Scarlett & Co., Inc.,* 506 F.2d 436 (5th Cir. 1975); (See Appendix "A").

The Congress itself, in rejecting a provision in the 1972 amendments to Title VII which would have limited class actions, expressly recognized and approved this judicial pattern of liberally certifying Title VII class actions in order to permit the inclusion of class claims which extend beyond those of the individual plaintiff.

"In establishing the enforcement provisions under this subsection and subsection 706(f) generally, it is not intended that any of the provisions contained therein shall affect the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rule of Civil Procedure. The Courts have been particularly cognizant of the fact that claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant. As a consequence, the leading cases in this area to date have recognized that many Title VII claims are necessarily class action complaints and that, accordingly, it is not necessary that each individual entitled to relief be named in the original charge or in the claim for relief. A

provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee." Section-by-Section Analysis, House-Senate Conference Committee, *Legislative History of the Equal Employment Opportunity Act of 1972,* p. 1947 (BNA 1973).

A minority of district courts, however, have declined to follow the broad class certification approach of the Courts of Appeal and have construed and applied the requirements of Rule 23(a)(2) and (3) restrictively in Title VII cases. *Burney v. North American Rockwell Corp.,* 302 F.Supp. 86 (C.D.Cal.1969); *Hyatt v. United Aircraft Corp.,* 50 F.R.D. 242 (D.Conn.1970); *Gresham v. Ford Motor Co.,* 53 F.R.D. 105 (N.D.Ga.1970); *Mason v. Calgon Corp.,* 63 F.R.D. 98 (W.D.Pa. 1974); *White v. Gates Rubber Co.,* 53 F.R.D. 412 (D.Colo.1971).[5]

CONCLUSION

Irrespective of this district court authority to the contrary, the Courts of Appeal, the Congress and indeed the Supreme Court[6] have all emphasized the importance of the broad remedial public policy of Title VII, and, in accordance with the majority of other courts, we conclude that the effectuation of this broad public policy requires that the commonality and typicality pre-requisites of Rule 23(a) be liberally applied in Title VII actions.

In so concluding, however, we do not hold that every Title VII action necessarily satisfies these two requirements. Where, for example, as in *Hill v. American Airlines, Inc., supra,* and *Gresham v. Ford Motor Co., supra,* a Title VII action is based upon the circumstances surrounding a particular course of disciplinary action taken against an employee by an employer, or, as in *Wells v. Ramsay, Scarlett & Co., supra,* the plaintiff is unable to establish any real "nexus" between the individual and the claims of the proposed class, class certification may be inappropriate for failure of the individual claim to meet the pre-requisites of commonality and typicality. Thus, even under the liberal majority rule, the pre-requisites of Rule 23(a) must be applied individually in each action.

In the instant action, we are unable to conclude that plaintiff's claims are primarily personal, and find her claims to be at least common to and typical of the identical claims of other former women employees. Plaintiff, however, seeks herein to represent a class of persons whose claims are broader than her individual claims in the following respects: *first,* the proposed class includes members having claims of discrimination with respect to hiring, training, and promotion, whereas plaintiff's individual claims are only with respect to compensation, performance, and termination; *second,* the proposed class includes both present and future employees, whereas plaintiff is a former employee; *third,* the proposed class includes Office and Clerical employees and Customer Representatives upon a claim that these employees are "segregated into" these positions, whereas plaintiff was never employed as a general Office and Clerical employee and does not individually allege that such "segregation" affected her as a Customer Representative; *fourth,* the proposed class includes employees in approximately 25 Branch Offices within the defendant's 10-state Western Region, whereas plaintiff was employed only in the Oakland (and perhaps the San Francisco[7]) Branch Office(s).

First, with respect to plaintiff's representation of claims of discrimina-

---

5. Although some of these district courts, in narrowly interpreting Rule 23, do not clearly distinguish between the last three requirements of Rule 23(a) and often collectively treat these last three requirements under the heading "adequacy of representation", the issues raised by these cases are considered here by this court, as more closely related to the question of commonality and typicality.

6. See *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

7. It is not clear from the instant record whether plaintiff Piva was employed at both the Oakland and San Francisco Branch Offices, or just the Oakland office.

388

tion relating to hiring, training and promotion, it is fundamental to the majority rule, as above-indicated, that the commonality and typicality requirements of Rule 23(a)(2) and (3) be liberally applied in order to permit a Title VII plaintiff to challenge employment practices which are related but are not identical to the practices which directly affected the plaintiff individually. Accordingly, we find the discriminatory practices alleged as individual claims of discrimination to be sufficiently related to the discriminatory practices alleged as class claims to satisfy the requirements of commonality and typicality.

■ Second, with respect to plaintiff's representation of present employees, it is well established under the majority rule that the claims of former and present employees are sufficiently common and typical to permit a former employee to challenge discriminatory current employment practices on behalf of a class of present employees. As stated in *Wetzel, supra,* to hold otherwise would be to encourage employers "to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing a suit as a class action." 508 F.2d at 247.

■ Courts have further allowed former employees to challenge discriminatory practices in hiring by permitting them to represent future employees. *Long v. Sapp, supra; Jack v. American Linen Supply Co., supra.* For that limited purpose, the court will permit plaintiff to represent a class of future employees, however, plaintiff will not be permitted to rely upon this portion of the class in order to satisfy the numerosity requirement of Rule 23(a)(1).

■ Third, with respect to plaintiff's representation of Office and Clerical employees, the court notes that plaintiff was never employed in such a position (except insofar as she may have been so categorized as a Customer Representative); that plaintiff did not allege any discriminatory practices affecting these employees in the complaint; and that

there is no factual matter in the record which indicates that the segregation of women into this category is directly related to defendant's practices with respect to its "sales" employees. Accordingly, we conclude, based on all these factors, that plaintiff has failed to demonstrate sufficient "nexus" between her individual claim and the proposed claim on behalf of Office and Clerical employees to satisfy the requirements of commonality and typicality.

■ With respect to plaintiff's representation of Customer Representatives, the court notes that plaintiff was initially employed as a Customer Representative; that plaintiff's individual claims are general and thus, include her period of employment in this position as well as in "sales" positions; that plaintiff was in fact promoted from this position to "sales" positions; and that other women employees have sought promotion from this position to "sales" positions. Accordingly, we conclude that the class claim on behalf of Customer Representatives is sufficiently related to plaintiff's individual claims of discrimination to satisfy the requirements of commonality and typicality.

■ Fourth, with respect to plaintiff's representation of employees throughout defendant's Western Region, there is no evidence in the instant record showing that the discriminatory practices alleged in plaintiff's individual claims are limited exclusively to the Branch Office(s) wherein plaintiff was employed. We conclude, however, that regardless of our findings as to commonality and typicality, the geographical scope of the proposed class more directly involves important considerations of *manageability.* From the instant record, we are unable to conclude that the scope of the proposed class is, or is not, geographically manageable.

Accordingly, we tentatively certify the class as to the entire Western Region, but we expressly reserve, both to the defendant and to the court, the right to move for reconsideration of the class upon a clearer record, upon grounds that

the scope of the class is, or will be, geographically unmanageable.

*Rule 23(a)(4)—Adequacy of Representation*

The Second Circuit, in *Eisen v. Carlisle & Jacqueline,* 391 F.2d 555 (2nd Cir. 1968), listed the following three factors as those to be considered in determining the adequacy of an individual plaintiff's representation of a proposed class: (a) whether plaintiff's counsel is competent and able to conduct the litigation effectively; (b) whether the action is collusive, i. e. whether there is an understanding with the defendant employer which will redound to the detriment of absent members of the class; (c) whether plaintiff's interests are antagonistic to those of the remainder of the class.

Upon a review of the record in the instant action, we conclude that plaintiff's counsel is competent and has considerable experience in this type of litigation and that any delay in the prosecution of this action which is exclusively attributable to plaintiff's counsel is not sufficient to render plaintiff an inadequate class representative. Neither do we find any evidence that this action is collusive or that there exists any conflict of interests between incumbent and non-incumbent employee class members which could not be avoided, if necessary, by the designation of subclasses.

*II. Rule 23(b)*

Rule 23 provides that an action may be maintained as a class action only if, in addition to the requirements of 23(a), *one* of the three alternative requirements of 23(b) is satisfied. Plaintiff contends that the instant action satisfies the requirement of Rule 23(b)(2), i. e., that:

"the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"

Pursuant to Section 2000e–5(g) [8] of Title VII, plaintiff in the instant action seeks both injunctive relief and an award of backpay on behalf of the proposed class.

Although on its face, Rule 23(b)(2) appears to refer only to "injunctive" and "declaratory" relief, the Advisory Committee Notes accompanying subsection (b)(2) state that "[t]he subsection does not extend to cases in which the appropriate final relief relates *exclusively* or *predominantly* to money damages" (emphasis added). Relying upon the language of this explanatory note and the fact that a Title VII backpay award is discretionary, and therefore equitable in nature, the circuit courts have uniformly held that, where both injunctive relief and backpay are sought in a class action, the class may properly be certified under (b)(2), and backpay may be awarded. (See *Wetzel v. Liberty Mutual Ins. Co. supra,* 508 F.2d at pp. 250–253 and the cases cited therein).

The importance of backpay awards in Title VII actions was recently re-emphasized by the Supreme Court in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In that case, a Title VII class action certified under (b)(2), the Court first declared that the central purposes of Title VII were to eradicate discrimination throughout the economy and to make persons whole for injuries suffered through past discrimination, and then held that, given a finding of unlawful discrimination, backpay should be denied "only for reasons [which], if applied generally, would not frustrate" either of these central statutory purposes. The Court specifically held that the fact that a defendant's unlawful discrimination

---

**8.** 42 U.S.C. § 2000e–5(g) provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . ., or any other equitable relief as the court deems appropriate."

was not committed in "bad faith" does not justify the denial of backpay to the class.

■ We are aware, however, that the certification of the instant action as a class action upon a class claim for backpay would present substantial questions of manageability. If it proved to be necessary, for example, to examine the individual circumstances surrounding each class member's denial of promotion or termination, final adjudication of this action might present insurmountable administrative problems.

In recognition of this potential manageability problem, plaintiff suggests that the proceedings in this action be bifurcated and that the court first determine the issues of class liability and injunctive relief, and later determine the issue of backpay as to the class.[9]

Bifurcation procedures similar to that proposed by plaintiff have been employed by other courts (2) in other private Title VII class actions (*Ellison v. Rock Hill Printing & Finishing Co.*, 64 F.R.D. 415 (D.S.C.1974); *Newmon v. Delta Airlines*, 374 F.Supp. 238 (N.D.Ga. 1973); *Paddison v. Fidelity Bank,* 60 F.R.D. 695 (E.D.Pa.1973)); (b) in a private non-class action (*Chastang v. Flynn & Emrich & Co.*, 365 F.Supp. 957 (D.Md. 1973)); and (c) in an action brought by the EEOC (*United States v. Lee Way Motor Freight, Inc.*, 7 EPD ¶ 9906, p. 6501 (W.D.Okl.1973)).

We conclude that, particularly in the light of the Supreme Court's strong support of Title VII backpay awards, a denial of class certification with respect to monetary relief at this stage in the proceedings for reasons of unmanageability would be premature and would, perhaps unnecessarily, provide defendant with a windfall immunity from class backpay liability. The question of the manageability of class backpay claims can be more reasonably considered following a determination as to liability, at which time the court would have determined which, if any, of the defendant's practices were unlawful and precisely how many, if any, class backpay claimants actually exist.

Accordingly, it is hereby ordered that the proceedings in the instant action will be bifurcated as hereinabove indicated, and that any class hereinafter certified should and will be certified only with respect to injunctive relief. The Court hereby defers ruling upon certification with respect to monetary relief until after a determination of liability.

## DEFENDANT'S SETTLEMENT AGREEMENT WITH THE EEOC

Defendant finally contends that, with respect to the class claim for injunctive relief, the court should not substitute its judgment for that of the EEOC, as expressed in a written settlement agreement entered into by the EEOC and defendant on April 30, 1975, which agreement expressly provides that Xerox has taken and will take certain action designed to prevent discrimination with respect to women. The Agreement to which defendant refers is set forth in pertinent part in Appendix "B", appended hereto.

■ It is clearly established, and is conceded by defendant, that the Agreement between the EEOC and defendant does not, as a matter of law, bar the instant action nor preclude certification of the proposed class. *Williams v. New Orleans Steamship Assoc.*, 341 F.Supp. 613 (E.D.La.1972); *Leisner v. New York Telephone Co.*, 358 F.Supp. 359 (S.D.N.Y. 1973).

■ Nor do we believe that, as a matter of discretion, class certification should be denied herein on the grounds that the class claim for injunctive relief is effectively mooted by the terms of the Agreement and that the court should not, therefore, superimpose its judgment upon that of the EEOC. A review of the Agreement reveals that it simply does not provide, or even purport to provide, relief adequate to satisfy all of the claims of the proposed class. The Agree-

---

9. See plaintiff's Memorandum in Response (Doc. No. 78, pp. 11–14).

ment was entered into by the EEOC prior to its completion of a full investigation of the claims settled thereunder; it does not include the charge of discrimination filed with the EEOC by plaintiff Piva; it does not cover defendant's alleged discriminatory practices with respect to compensation or termination; it does not commit defendant to the taking of any action specifically related to discrimination in sales positions; and, inasmuch as the parties whose charges are named therein are permitted by the terms of the Agreement to bring a legal action even after the Agreement has been executed, it does not even purport to settle finally the claims upon which it is based.

Thus, although the Agreement may be relevant to the fashioning of possible judicially imposed injunctive relief, it does not provide relief adequate to satisfy and render moot the instant class claims for injunctive relief.

## ORDER

For the reasons hereinabove discussed, it is hereby ordered that the instant motion for class certification should be, and hereby is granted and that the class so certified shall be defined as follows:

All women who have been employed by Xerox Corporation or who have applied for but been denied employment by Xerox in sales or sales management positions (including the position of Customer Representative) in Xerox's "Western Region Business Products Group" (or "Western Regional Operations"); all women who are now so employed; all women who may in the future be so employed or who may in the future ·apply for but be denied such employment and which groups of women have been, are being, or may in the future be discriminated against on the basis of their sex by defendant's practices with respect to hiring, compensation, training, promotion and termination.

This order of certification is made with respect to injunctive relief only, and although it is generally "conditional" within the meaning of Rule 23(c)(1), it is specifically made subject to reconsideration as to the requirement of numerosity and considerations of manageability.

## APPENDIX A

In *Brito v. Zia Co.*, 478 F.2d 1200 (10th Cir. 1973), the Court of Appeals affirmed a district court's denial of a class action as not clearly erroneous, without further explanation or elaboration. (See, however, *Rich v. Martin Marietta Corp., infra*, a more recent expression of the Tenth Circuit's position with respect to certification of Title VII classes, wherein the court applied the Fifth Circuit's "across the board" approach).

In *Hill v. American Airlines, Inc.*, 479 F.2d 1057 (5th Cir. 1973) a black "skycap" employed by defendant at the San Antonio, Texas airport sought to represent a class consisting of all black skycaps employed by defendant throughout the country, or, in the alternative, a class of all black skycaps employed by defendant at the San Antonio airport. The district court denied certification of either class, on the grounds that the first class lacked any substantial common question and was unmanageable and that the second class lacked sufficient numerosity, and the Court of Appeals affirmed.

In *Air Line Stew. & S. Assoc., Local 550 v. American Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973), the Court of Appeals held that a union which was controlled by present employees could not adequately represent, and did not have claims typical of, the claims of a class consisting of former women employees who had been permanently discharged because of pregnancy.

In *EEOC v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975), the Court of Appeals restricted the definition of the class to that included in the district court's last pre-trial order, holding that a district court cannot amend the class definition at the time of its decision on the merits and, alternatively, that the plaintiffs in the case at bar had failed to allege or prove sufficient facts to permit the district court to include in the class,

as it did, either unsuccessful black applicants or other black persons deterred from applying for employment because of the defendant's reputation for discrimination.

In *Heard v. Mueller & Co.,* 464 F.2d 190 (6th Cir. 1972), the Court of Appeals affirmed the district court's denial of a class action brought by a former employee who sought to represent present employees, but who did not seek reinstatement, relying solely upon *Huff v. N. D. Cass Co.,* 468 F.2d 172 (5th Cir. 1972), which decision was reversed by the Fifth Circuit sitting *en banc,* in *Huff v. N. D. Cass Co.,* 485 F.2d 710 (5th Cir. 1973).

In *Wells v. Ramsay, Scarlett & Co., Inc.,* 506 F.2d 436 (5th Cir. 1975), the Court of Appeals affirmed the district court's denial of class certification in a Title VII action brought by a black male employee, who had been discharged from his position as foreman for a stevedoring company, against the employer and the longshoreman's union. The plaintiff sought to bring the action on behalf of all black longshoremen who were present or potential future employees of the defendant employer and members of the defendant union. Finding that the plaintiff was a salaried employee, employed on a monthly basis to supervise longshoremen; that he had severed his affiliation with the defendant union long before his complaint was filed; that plaintiff admitted he was physically unable to perform the services of a longshoreman; and that the longshoremen in the asserted class were members of the defendant union and were assigned by the union on a daily basis to the stevedoring companies for the available jobs; the Court of Appeals held that plaintiff had not established sufficient *nexus* between himself and the proposed class to enable him to represent that class.

### APPENDIX B

The Agreement entitled "Pre-determination Settlement in the Matter of EEOC and Richard Kier, et al. (Charging Parties) and Xerox Corporation (Respondent)", provides that the nineteen parties whose charges are included therein "will upon request be furnished the [EEOC's] standard 'Right to Sue' letter with the [EEOC] taking no position in support of litigation of matters specifically enumerated in this Agreement" (¶ 15) and that, in consideration of certain undertakings by Xerox set forth in the Agreement, the EEOC agrees "to close its expedited investigation of these charges without the issuance of Findings of Fact or a determination as to whether or not probable cause exists to believe that the allegations of the charges are true."

The entire Agreement is nineteen pages long and sets forth various remedial and affirmative actions which Xerox has taken or will take in the future, procedures for the keeping of records and the filing of quarterly reports by Xerox, and an expedited complaint—handling procedure. Specifically with respect to females and/or sales positions, the Agreement provides that Xerox has established a special program for females designed to enhance their career development (¶ 13); that Xerox has reviewed the utilization of female employees in the Branch sales force and, as a result of that review, will make payments totaling more than $34,000 to six former female employees (¶ 14); that Xerox will review document language for implied preferences based on sex (¶ 16); that Xerox is training interviewers to eliminate preconceived ideas that certain jobs are either "male" or "female" jobs (¶ 19); that Xerox will separately file rejected applications submitted by females (¶ 24); that Xerox will consider sex as an employment criteria only if it is established as a bona fide occupational qualification by the EEOC (¶ 28); that Xerox has amended its pregnancy policy (¶ 32); that recently adopted procedures for the protest of sales territory assignments shall continue in full force and effect (¶ 34); that female employees who are denied requests for promotion or transfer shall be notified of the reasons for the denial and shall have a right to protest the denial (¶ 36).