Joan Marie PETERSON, on behalf of herself and all others similarly situated, Plaintiff,

v.

ALBERT M. BENDER CO., INC., a corporation, Defendant.

No. C–76–1133–CBR.

United States District Court,
N. D. California.

April 4, 1977.

Helen B. Culiner, San Francisco, Cal., for plaintiff.

Robert F. Millman, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION
## AND ORDER

RENFREW, District Judge.

Presently before the Court is plaintiff's motion that the case be maintained as a class action. Plaintiff, a former employee of defendant Albert M. Bender Co., Inc. ("Bender"), brought this action against Bender on June 3, 1976, charging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*).

This action was set for trial on April 4, 1977. The Motion for Determination that the Action be Maintained as a Class Action was filed on February 2, 1977, and heard on February 24, 1977.

Plaintiff alleges that Bender paid females less than males for substantially the same work, refused to hire females for higher paying positions because of their sex, refused to promote females because of their sex, and terminated female employees for attempting to bring Bender's allegedly unlawful employment practices into conformity with Title VII. Plaintiff prays for a permanent injunction to prevent defendant from engaging in the alleged activities and seeks reinstatement, back pay, reclassification, and attorneys' fees. The class alleged by plaintiff is composed of all present, future and former female employees from September 9, 1972.[1]

After considering the materials submitted by the parties regarding mainte-nance of the case as a class action, the Court concludes that while plaintiff could represent a class restricted to underwriters, such a class is not so numerous that joinder of all members is impracticable and therefore the motion to maintain the action as a class action is denied, and the trial date has been reset for October 11, 1977.

Plaintiff contends that a class action should be maintained under Rule 23(b)(2) of the Federal Rules of Civil Procedure. In order to bring a class action, she must satisfy the requirements of subsection (b)(2) as well as the four general prerequisites to the maintenance of a class action detailed in Rule 23(a):[2] (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.[3] The subsection (a)(1) requirement that the class be so numerous that joinder of all members is impracticable will be considered here after examining the requirements of commonality and typicality in subsections (a)(2) and (a)(3).

### I. Questions of Law or Fact Are Not Common to All Class Members.

Under subsection (a)(2), plaintiff has the burden of showing that there are questions of law or fact common to the class. Plaintiff has attempted to meet this burden by alleging that defendant has discriminated against present and former female employees by paying them less than men for substantially the same work, by refusing to hire or promote women to higher paying

---

1. Bender contends that since plaintiff's original charge was filed with the Equal Employment Opportunity Commission ("EEOC") on September 10, 1973, under 42 U.S.C. § 2000e–5(e), before an individual could be a member of the putative class, she must have a claim 300 days before or as of November 14, 1972. However, in light of the result reached here, this error in computing the time period is of no significance.

2. While not specifically set forth in Rule 23, there are two threshold inquiries: Is there an identifiable class and is plaintiff a member of that class? These requirements have been met here as hereafter shown.

3. Rule 23 provides in pertinent part:

    "(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numer-ous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

    "(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    \* \* \* \* \* \*

    "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; \* \* \*."

positions, and by discharging female employees for taking action to end defendant's alleged unlawful employment practices. In support of these claims, plaintiff has filed an affidavit in which she states that she was reprimanded for filing a discrimination charge in September, 1973, against Bender with the EEOC. She further claims that she was reprimanded by the Vice-President of Bender, Richard Metcalfe, in March, 1974, after requesting to speak with the Treasurer of Bender, Bruce Ricci, regarding equal opportunities for women. Shortly after the alleged conversation with Richard Metcalfe, plaintiff was allegedly asked to resign. Plaintiff also states that she observed "a general pattern of discrimination against women employees" while she was employed at Bender. Plaintiff avers that defendant employed no females as officers or account executives, and that male underwriters were paid more than female underwriters.

As further support for her contention that there are common questions of law or fact, plaintiff introduces statistics purporting to show a general policy of discrimination against female employees. The first set of data (Motion at 2–5) comparing average monthly and annual salaries of male and female employees for years 1973 through 1976 shows that the average salary paid to men was higher than the average salary paid to women.

The second set of data, submitted in a supplemental affidavit, consists of a comparison of the monthly salaries of female underwriters with those of male underwriters for years 1973 through 1976 (Exhibits B through E). Also included are years of experience at date of hire and year of hire. Years of experience is not defined by plaintiff, and names of employees are not given. Some files were missing and some information was not available, according to plaintiff.

■ The first set of data, based on averages, does not persuade this Court, for purposes of determining whether a class action should be maintained, that Bender engages in a general policy of discrimination against women. Salaries are not given by job categories, nor is any evidence provided regarding work experience or qualifications of class members.

■ The second set of data is more convincing, because it provides the Court with job categories (although defendant argues that underwriters engaged in "commercial line" underwriting have greater responsibilities than those engaged in "personal line" underwriting, a distinction not made by plaintiff), years of experience, and monthly salary.

More specifically, the data show that as of November, 1976, 14 out of 101 employees at Bender's San Francisco office were underwriters, 12 of whom were women (Exhibit A). Exhibit B shows that for year 1973, during which Bender employed 26 female underwriters and 1 male underwriter, a comparison of salaries of male and female underwriters reveals that a female underwriter with nine years of experience at date of hire earned $800 per month, while a male underwriter with eight years of experience at date of hire earned $1,250 per month. Six additional women underwriters with more than eight years of experience at date of hire earned less than the male underwriter. No woman earned as much as the man. The highest salary paid to women was $900.

If years with the company are added to years of experience at date of hire, the male underwriter had a total of 12 years. The salaries of the three women with more than 12 years of experience, including experience with Bender, were $800 per month, $900 per month, and $800–850 per month, in comparison with the male underwriter's salary of $1,250 per month. The data for years 1974, 1975, and 1976 also reveal differences in the salaries of male and female underwriters with the same number of years of experience.

Assuming, *arguendo*, that the skills required for the underwriter positions held by men were similar to the skills required for positions held by women, and assuming that

years of experience[4] at date of hire is defined by plaintiff in a way that relates to the acquisition of skills necessary to perform the duties of an underwriter, plaintiff might be able to establish common questions of law or fact with respect to a class of women. However, the class alleged by plaintiff includes all women employed by Bender, not just underwriters. Her "across the board" approach is insufficient to include all women in the proposed class because the evidence of discrimination which plaintiff has adduced in her affidavit and in the salary statistics does not apply to all women employed by Bender.

This is not to say that the "across the board" approach cannot be used to show discrimination in violation of Title VII. Courts have permitted named plaintiffs to represent broad classes when the evidence available at the time of the decision to maintain the action as a class action indicates that defendant may have engaged in a broad policy of employment discrimination against the class of defendants. *E. g., Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340–341 (10 Cir. 1975); *Barnett v. W. T. Grant Co.*, 518 F.2d 543, 547–548 (4 Cir. 1975); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 385–386 (N.D.Cal.1975).

Contrary to defendant's contention that the "across the board" approach has been "discredited" or "fallen into disrepute" or "rejected," the approach is still accepted in appropriate circumstances.[5] Plaintiff correctly points out that *Wells v. Ramsay, Scarlett & Co., Inc.*, 506 F.2d 436 (5 Cir. 1975), cited by defendant as a rejection by the Fifth Circuit of the across-the-board approach, was merely a clarification of the requirement that the named plaintiff be a

member of the class he purportedly represents in order that his claims be typical of those of the putative class. The court there phrased the requirement in terms of a nexus between the plaintiff and the members of the class; it was not a rejection of the across-the-board approach.

Moreover, the Ninth Circuit in *Gibson v. Local 40, Supercargoes and Checkers of I. L. W. U.*, 543 F.2d 1259 (9 Cir. 1976), did not reject the across-the-board approach when it excluded from a class two types of clerks who were not represented by the named plaintiffs. The excluded clerks, "class A" and "class B," were the only clerks who were members of the permanent work force. The named plaintiffs were "casual" clerks, and their claims were not typical of the claims of the "class A" and "class B" clerks. The court therefore dismissed the latter clerks from the class in order to eliminate the res judicata effect upon their potential claims on a record that was not fully developed with respect to those claims. 543 F.2d at 1264–1265.

Despite the fact that the across-the-board view is still in effect in the Ninth Circuit, plaintiff's statistical data, taken together with her individual factual allegations, are insufficient to support maintenance of a class composed of all women employed by defendant. As stated above, there is no indication that all women were victims of systematic discrimination by defendant. Evidence that the average salaries for women were lower than the average salaries for men, without more, proves nothing. There is no evidence that the female employees, with the possible exception of underwriters, possessed the qualifi-

---

4. As defendant points out, experience has not been defined. At this point the record does not reflect whether it is years in the particular job category or simply with the company or in the industry. In light of the result reached here, we need not pursue this point but it must be noted that the Court gave the benefit of the doubt to plaintiff, which would not have been the case had it been necessary actually to define a class in this case.

5. The authorities relied upon by defendant do not support its position. Analysis of these

cases reveals that the courts there were focusing their attention on the requirements of typicality and whether the named plaintiff could adequately and fairly represent the class. Thus, while these requirements are discussed elsewhere in this memorandum, it is appropriate to analyze these cases at this time. It might be noted that too often the requirements of commonality, typicality and adequate representation have been discussed by the courts without precisely distinguishing these separate requirements of Rule 23.

cations necessary to advance to higher, managerial positions. Nor is there evidence that women, with the exception of underwriters, were receiving less pay for equal work, or that they had been fired for protesting unequal employment opportunities at Bender. While plaintiff is not required to prove her case at this stage, she does have the burden of providing the Court with evidence to support her position that a class should be maintained under Rule 23. *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1126 (5 Cir. 1969), Godbold, J., *specially concurring*. If defendant in this case were a large industrial plant with many workers performing jobs which required similar levels of expertise, and general statistical data were presented to the Court, a different determination might be made. *See Senter v. General Motors Corp.*, 532 F.2d 511, 527 (6 Cir. 1976); *Piva v. Xerox Corp., supra*, 70 F.R.D. 378. Here, however, defendant is a growing insurance brokerage firm with widely varied levels of expertise required of its employees. The differences between the duties of a file clerk and a senior underwriter are too great for them to be placed in the same class without more evidence of a general policy of sex discrimination. Plaintiff raises questions of law or fact common to underwriters, but not to all women employed by Bender. Therefore, a class composed of female underwriters could be represented by plaintiff if the other requirements of Rule 23 are met.

## II. *Plaintiff's Claims Are Not Typical of the Claims of the Class.*

Rule 23(a)(3) requires that the claims of the representative be typical of the claims of the class. However, plaintiff's claims are not typical of all women employed by Bender.

As evidence to the contrary, plaintiff refers to defendant's answers to interrogatories which indicate that the majority of female employees are underwriters and clerical workers, while the majority of male employees hold higher paying managerial positions. In addition, plaintiff, as a former underwriter for Bender, is a member of the group of women allegedly discriminated against. She further argues that typicality and commonality are closely allied.

While it is correct that "[f]actual identity between the plaintiff's claims and those of the class he seeks to represent is not necessary," *Senter v. General Motors Corp., supra*, 532 F.2d at 524, it *is* necessary that there be sufficient nexus between the claims of the plaintiff and of the class so that the interests of class members will be presented at trial, particularly in consideration of the res judicata consequences of class actions vis-a-vis absent class members. *Johnson v. Georgia Highway Express, Inc., supra*, 417 F.2d at 1126.

In *Gibson v. Local 40, Supercargoes and Checkers of I. L. W. U., supra*, the Court of Appeals held, *inter alia*, that the class alleged by plaintiffs should be narrowed because "[t]he record discloses differences between class A and class B clerks and casual clerks that affect the nature of an effective presentation of their claims with respect to both liability and relief." 543 F.2d at 1264. Named plaintiffs who were all casual clerks were distinguished from class A and class B clerks by the court because casual clerks (1) are not part of the permanent work force, as are class A and class B clerks, (2) may hold other regular employment while class A and class B clerks may not, (3) have no guaranteed wage while class A and class B clerks do, (4) have no apprenticeship relationship to class A and class B clerks, while class B clerks serve as apprentices and are promoted to class A when vacancies occur. 543 F.2d at 1264–1265.

In the instant case, there is no evidence that plaintiff, an underwriter, has claims which mesh sufficiently with the claims of secretaries, clerks, and other clerical personnel. To be more specific, there is no evidence that female secretaries employed by Bender are even eligible for promotion in the same way as underwriters are. Nor is there any evidence that they have been denied promotion, are not given equal pay for equal work, and indeed are qualified to be placed in the higher paying positions presently occupied almost exclusively by males. Nor is it apparent that

lack of typicality can be overcome. Plaintiff and other underwriters are the only women similarly situated in this class.

It is correct that the *Gibson* class was narrowed to casual clerks following a full-scale trial. However, here, plaintiff has had the opportunity to provide additional evidence to support the maintenance of a class. Moreover, a decision must be made "as soon as practicable after the commencement of an action" regarding maintenance of a class, and this case has been pending for over nine months. Thus pursuant to Rule 23(c)(1) [6] a decision cannot be deferred any longer.

For the foregoing reasons, the Court therefore narrows the purported class to female underwriters, including senior and assistant underwriters.

III. *The Class Is too Small to Make Joinder Impracticable under Rule 23(a)(1).*

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. However, a class of past and present underwriters of Bender could be joined by plaintiff. As of November, 1976, defendant employed 22 women as underwriters (9 senior underwriters, 12 underwriters, and 1 underwriting assistant). The Court's best estimate of the size of the class is between 35 and 45 members.[7] The Court concludes that this number is not so large that joinder is impracticable.

Having disposed of the class nature of the case under Rule 23(a)(1), (2) and (3), the requirements of Rule 23(a)(4) and 23(b)(2) need not be considered here.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for maintenance of this action as a class action is denied.

IT IS HEREBY FURTHER ORDERED that defendant Albert M. Bender Co., Inc., provide notice of the pendency of this action to present and former female underwriters, assistant underwriters, and senior underwriters so that they may join the action before the trial commences.

---

**6.** Rule 23(c)(1) provides:

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

**7.** The data contained in plaintiff's Exhibits B through E of the Supplemental Affidavit are internally inconsistent. For example, the 1973 chart shows 8 persons with a date of hire in 1973, while the 1974 chart shows 10 persons with a date of hire in 1973. This inconsistency leads the Court to believe that the size of the class may well be even smaller than the estimated 35 to 45.

The estimate was reached by two methods. First, based on statistics for underwriters contained in Exhibits B through E, females hired in 1973 had an approximate annual turnover rate of 25%. This percentage was determined by looking at the charts for 1974 and 1975 and identifying individuals by the date of hire and years of experience. If an employee with the same date of hire and years of experience was found in 1974 and 1975, it was assumed that the individual did not quit and was not replaced during those two years. 1976 was not included for the purposes of this estimate because the large reduction in the number of underwriters would have shown an unusually high rate of attrition. Assuming an overall attrition rate of 25%, the class would consist of 26 underwriters in 1973; 9 new class members in 1974 ((29 (1974) − 26 (1973) = 3 new underwriters due to increase in staff size) + (25% × 26 underwriters = 6 replacement underwriters) = 9); 4 new class members in 1975; and 0 new class members in 1976, which yields a total of 39. This is obviously an imprecise method because for some years the rate of attrition may be higher than shown in overall differences in the size of the work force. For example, in 1976, the number of underwriters was reduced by 8, but 4 new underwriters were hired, indicating that besides reducing the work force by 8, at least 4 former employees were replaced, increasing the possible class size by at least 4 instead of 0.

Second, the other method to calculate the number of class members is to add the additions to the work force for each year to the original 26 underwriters in 1973. This would yield a total of 38 class members. However, as mentioned above, the statistics are flawed because the 1974 chart shows more employees hired in 1973 than the 1973 chart shows.