**Irene S. LO RE et al., Plaintiffs,**

**v.**

**The CHASE MANHATTAN CORPORATION et al., Defendants.**

**No. 76 Civ. 154.**

United States District Court,
S. D. New York.

March 25, 1977.

---

Vladeck, Elias, Vladeck & Lewis, P.C., New York City, for plaintiffs; by Judith P. Vladeck, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, for defendants; by Howard L. Ganz, Joan Z. McAvoy, John Lewis, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an action by several women who are, were, or have sought to become employees of defendant Chase Manhattan Corporation (hereinafter "CMC") for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiffs alleged that CMC has carried on a wide-ranging policy of discrimination aimed at preventing women from achieving managerial, professional, or official positions with defendants and that this policy has been implemented by CMC's numerous subsidiaries and by particular officers of CMC and its primary subsidiary, Chase Manhattan Bank (hereinafter "CMB").[1] Thus, in addition to their individual claims, plaintiffs seek class certification, alleging that defendants maintain a pattern of sex discrimination, which can be summarized as follows: 1) defendants limit females to lower-paying office and clerical work by discriminatory recruiting and interviewing policies; 2) defendants hire females into sex-segregated jobs and discourage and prevent women from applying for more responsible positions· 3) defendants relegate women to supportive staff positions while assigning males the more responsible jobs involving lending and management; 4) defendants hire women into positions for which they are overqualified and either refuse to promote them to positions for which they are qualified or promote qualified women less rapidly than similarly situated men; 5) defendants discriminate against qualified women in training programs; 6) defendants discriminate along sex lines in the area of pay and fringe benefits; and, 7) defendants harass and retaliate against female employees who object to these discriminatory practices.

Defendants have moved to dismiss the complaint on three grounds: first, that plaintiffs evaded and frustrated consideration and processing of their charges by the New York State Division of Human Rights (hereinafter the "State Division") and by the Equal Employment Opportunity Com-

---

1. The complaint names CMC, CMB, and the principal officers of these two entities as defendants. Plaintiffs claim that CMC "initiates, implements and authorizes the employment policies and practices of all its banking subsidiaries." Plaintiffs' Complaint at 6. The complaint charges that CMC, a multi-bank holding company, owns and operates CMB along with eight other subsidiary banks with approximately 38 New York branches. According to plaintiffs, all of CMC's New York subsidiary banks have been or will be merged into CMB.

mission ("EEOC"); second, that as regards plaintiff Foster, she has not received a "notice-of-right-to-sue" from the EEOC; and, third, that insofar as the complaint alleges that defendants refused to employ plaintiff Lo Re on or about January 11, 1973, such charges were not timely filed.

Plaintiffs have filed a cross-motion seeking class certification under Fed.R.Civ.P. 23(b)(2) on behalf of all females who are presently employed, have been employed, have sought employment, or who may subsequently seek employment with the corporate defendants. Defendants oppose this motion on the following grounds: (1) plaintiffs have failed to satisfy Fed.R.Civ.P. 23(a)(2) and (3), which require that there be question of law or fact common to the class and that the claims of the named representatives be typical of the class; (2) defendants have not acted on grounds generally applicable to the class within the meaning of Rule 23(b)(2). In the alternative, defendants seek to limit the class action to claims seeking class-wide declaratory and injunctive relief and to limit the class to individuals who have or may suffer from discrimination regarding official, managerial, or professional positions. Further, defendants seek to exclude as time-barred claims that arose more than 180 days prior to the filing of EEOC charges by the class representatives. See 42 U.S.C. § 2000e–5(e).

For the reasons explained below, I must deny defendants' motion to dismiss, and certify a class consisting of all females who are presently employed, have been employed, have sought employment, or who may subsequently seek employment with the corporate defendants in official, managerial, and/or professional positions[2] and who have been, continue to be, or would be adversely affected by the practices alleged.

Further, the cut-off date for statute of limitations purposes shall be 300 days prior to August 7, 1973, the date upon which the first of the named representative-plaintiffs' charges were filed with the EEOC.

I will first consider defendants' motion to dismiss. At the outset, it is necessary to summarize the background of the plaintiffs' charges. Plaintiffs claim that Irene Lo Re was invited by CMB on or about January 5, 1973, to a job interview by means of a letter that erroneously addressed her as a male. On January 11, 1973, Lo Re received a letter addressed to her as "Ms.," which advised her that there were no job openings. Following complaints by Lo Re that the letters evidenced sex discrimination, Lo Re took part in what are alleged to be "pretextual" job interviews. The complaint alleges that in April, 1973, two confidential charges[3] were filed with the EEOC. The first charge alleged that the complainant's employment application with CMB was rejected due to her sex. The second charge alleged that on March 28, 1973, CMB refused to employ the complainant in retaliation for her protests of sex discrimination. Both charges sought relief on behalf of the complainant and all other persons similarly situated.[4] These charges were referred by the EEOC to the State Division on August 13, 1973. The EEOC subsequently investigated the charges, made a finding of probable cause, and attempted to bring about a settlement. These attempts were unsuccessful and terminated sometime late in 1975. Defendants allege that this was due to the fact that Lo Re made broad demands aimed at precluding any reasonable settlement. Defendants do not contest that at the time the suit was filed on January 13, 1976, plaintiff Lo Re had received the statutorily required "right-to-sue notice." See 42 U.S.C. § 2000e–5(f)(1).

---

**2.** The terms "official," "managerial," and "professional" have been used by both parties and apparently refer to established job categories with respect to which the defendants regularly file reports with the federal government. See Defendant's Memorandum in Opposition to Plaintiffs' Motion for a Rule 23(b)(2) Class Action Determination at 39.

**3.** "Confidential" charges do not specify the name of the complainant; thus, in the August 7 charges Lo Re was identified only as "an aggrieved person."

**4.** See Affidavit of Howard L. Ganz (hereinafter the "Ganz Affidavit"), Exhibit N.

The complaint alleges that plaintiff Shane was employed as a personnel counselor employed by CMB, that she was denied any opportunity for promotion and was passed over in favor of less qualified males, that less qualified males performing the same work received more pay than she, and that she was harassed and fired because of her opposition to defendants' discriminatory policies. On February 27, 1975, Shane filed a complaint with the EEOC alleging that due to her sex and religious beliefs she was being discriminated against in the terms and conditions of employment, that she had been harassed by superiors, and had been passed over for promotion by less qualified males.[5] A similar complaint was filed with the State Division on March 6, 1975. It appears that shortly thereafter, Shane's counsel requested the State Division to stay investigation pending the preparation of an amended complaint. The amended complaint which, according to defendants' affidavit was filed with the State Division on or about April 1, 1975, broadened the original complaint and was brought in the form of a class action proceeding. On May 30, 1975, pursuant to Shane's request, the State Division waived jurisdiction of the amended complaint to the EEOC. On October 30, 1975, Shane, who was now represented by counsel for the plaintiffs in this case, Edith Vladeck, requested that her claim be processed along with those of several other plaintiffs in this case. Shane requested a right-to-sue notice on November 6, 1975. The complaint alleges, and defendants do not contest, that Shane received a right-to-sue notice prior to the initiation of this suit.

On August 8, 1975, seven confidential charges of discrimination against CMC were filed with the EEOC on behalf of a then unknown number of aggrieved persons; the charges alleged a pattern of discrimination essentially the same as earlier outlined in the summary of the plaintiffs' complaint and were filed on behalf of the aggrieved persons and all similarly situated individuals. On August 8, 1975, pursuant to the request of counsel, which was endorsed by the EEOC District Director, the State Division waived jurisdiction of the charges to the EEOC. On August 12, 1975, the EEOC requested counsel, Edith Vladeck, to submit affidavit forms that would identify the aggrieved individuals. However, the identities of the "aggrieved persons"—plaintiffs Lee, Messeca, Ordano, Robbins, Schwering, and Stephens-Solomon—apparently were not revealed to the EEOC until sometime in December 1975.[6] On January 13, 1976, these plaintiffs joined in the present suit; by letter dated February 3, 1976, plaintiffs' counsel informed the EEOC that while she would like to cooperate in any way possible with the EEOC, she was not clear what purpose further investigation by the EEOC would serve, as suit had been filed in the district court.

As regards plaintiff Brady, the complaint alleges that she was denied opportunity for promotion and that although she performed the functions of an assistant manager, was denied the salary or title of such position; the complaint further alleges that Brady was terminated in retaliation for her protests of discrimination. Documents submitted by the defendants indicate that Brady filed a complaint with the State Division on October 7, 1975, which resulted in a finding of no probable cause on February 9, 1976; the EEOC appears to have relied on this finding in its April 5, 1976 determination of no probable cause.[7]

5. See Ganz Affidavit, Exhibit H.

6. The documents submitted by the parties indicate that a second request for the identity of the complainants was submitted to Ms. Vladeck on October 15, 1975. In her affidavit Vladeck indicated that she had waited until an investigator was assigned to the case, on October 15, 1975, before revealing the identities in order to forestall the danger of retaliation by Chase; her affidavit states that she "promptly" complied with the October 15 request. Documents submitted by the defendants indicate that the affidavits were dated December 2, 1975 and were received by the EEOC on December 17, 1975. See Ganz Affidavit, Exhibit E; Defendants' Exhibit 5.

7. Defendants have submitted copies of the administrative determinations. See Defendants' Exhibit P. The EEOC determination indicates that a right-to-sue notice was issued to Brady

Finally, the complaint charges that plaintiff Foster has been passed over for a position as a bank officer by lesser qualified males and has been transferred into a lower graded position in retaliation for her protests of discrimination. According to plaintiffs' affidavit, Foster filed charges with the EEOC on January 2, 1976 and the State Division waived jurisdiction on January 15.[8]

*Defendants Motion to Dismiss*

Defendants' primary claim is that plaintiffs have engaged in a course of conduct designed to prevent the administrative process from resolving the issues raised by the plaintiffs. Further, defendants contend that Congress intended state agencies and the EEOC to play a primary role in the resolution of disputes under Title VII and that plaintiffs who have deliberately sought to evade or obstruct the administrative process should not be permitted to seek relief in federal court. The only direct support for this proposition is found in *Budreck v. Crocker National Bank,* 407 F.Supp. 635 (N.D.Cal.1976). See also *Scott v. University of Delaware,* 385 F.Supp. 937, 943 (D.Delaware 1974) (dicta).[9] However, assuming *arguendo* that in a proper case a court should find jurisdiction lacking where

a plaintiff who has otherwise met the jurisdictional requirements of Title VII actively seeks to evade or obstruct the administrative processes, this is not such a case.

At the outset, it is clear that in order to bring suit under Title VII a plaintiff must first file a timely charge with the EEOC and receive a right-to-sue notice. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weise v. Syracuse University,* 522 F.2d 397, 411–12 (2d Cir. 1975). It is equally clear that prior to the institution of this suit these jurisdictional requirements were met by plaintiffs Lo Re and Shane. Further, although plaintiff Brady did not receive a right-to-sue notice until after she filed suit, administrative proceedings continued and ultimately terminated in findings of no probable cause. Brady was issued a right-to-sue notice on April 5, 1976, over a month prior to defendants' motion to dismiss.

It is difficult to see how defendants can claim any prejudice by Brady's allegedly premature action; accordingly, even were this an individual rather than a class action, to dismiss Brady's charges under the circumstances would amount to a "rigid insistence on meticulous observance of technicalities unrelated to any substantive pur-

---

on April 5, 1976. Copies of correspondence submitted by defendant also indicate that Brady has sought to have her State Division complaint withdrawn, which according to defendants indicates bad faith on her part. See Defendants' Exhibit Q. Plaintiffs contend the withdrawal was sought merely because the state determination was rendered beyond the 60 day maximum deferral period required by 42 U.S.C. § 2000e–5(d). In any case, since agency findings of no probable cause are in no way binding upon actions brought in district court, the relevance of defendants' claims in this regard are *de minimis.* See 42 U.S.C. § 2000e–5(F)(1).

8. It appears that as of the time defendants' motion was filed with the court, all of the plaintiffs had received right-to-sue notices from the EEOC, with the exception of Ms. Foster. See Ganz Affidavit at 6; Defendants' Memorandum in support of the Motion to Dismiss at 22. Plaintiffs' affidavit at 22, filed on July 29, 1976, alleges that Foster is now entitled to the notice and that it has been requested.

9. Other cases cited by defendants for this proposition are inapposite. These cases dealt with claims where the plaintiff had failed entirely to file charges with an administrative agency prior to filing suit, see e. g., *Troy v. Shell,* 378 F.Supp. 1042, 1045 (E.D.Mich.1974), appeal dismissed, 519 F.2d 403 (6th Cir. 1975), or where the EEOC failed to defer charges to the state agency before processing the charges, see, e. g., *Mitchell v. Mid-Continent Spring Co. of Kentucky,* 466 F.2d 24 (6th Cir. 1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973); *Corne v. Bausch and Lomb, Inc.,* 390 F.Supp. 161 (D.Ariz.1975); or, where plaintiff failed to contact the EEOC after a state agency finding of no probable cause. See *Stebbins v. Nationwide Mut. Ins. Co.,* 382 F.2d 267, 268 (4th Cir. 1967), cert. denied, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). The court has no quarrel with the general proposition for which these cases stand—that Title VII contemplates resort to the administrative process before bringing an action in district court.

pose". *Weise v. Syracuse University, supra*, 522 F.2d at 412.[10]

 Taking defendants' factual allegations as true, as I must on these matters, I find without merit defendants' allegations that Lo Re, Shane, and Brady engaged in behavior warranting dismissal of their charges. Defendants' allegations regarding Lo Re amount to an allegation that she refused to bargain in good faith. However, the law is clear that Title VII requires only that the Commission have an *opportunity* to bring about a voluntary settlement; there is no requirement that conciliation efforts even take place, let alone a jurisdictional prerequisite that the charging party come to the bargaining table with demands that the other side considers reasonable. See *Troy v. Shell Oil Co., supra*, 378 F.Supp. at 1045, and cases cited therein; *Hecht v. Cooperative for American Relief Everywhere, Inc.*, 351 F.Supp. 305, 308–09 (S.D.N.Y. 1972), and cases cited therein.

Defendants make two allegations concerning plaintiff Shane: first, that by obtaining a waiver of jurisdiction from the State Division Shane succeeded in evading conciliation efforts by the local agency; and second, that Shane's subsequent behavior succeeded in preventing the EEOC from resolving the dispute. The first claim is frivolous as applied to Shane or any of the other plaintiffs. The practice of state agencies deferring jurisdiction to the EEOC was expressly approved by the Supreme Court in *Love v. Pullman*, 404 U.S. 522, 525–26, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). See *Barela v. United Nuclear Corp.*, 462 F.2d 149, 150–51 (10th Cir. 1972); *Leisner v. New York Telephone Co.*, 358 F.Supp. 359, 359 n. 1 (S.D.N.Y.1973). In fact, Shane went farther than did the complainants in

*Love* by filing charges with both the State Division and the EEOC. I find nothing devious about Shane's relations with the EEOC. Shane's amended complaint was deferred to the EEOC on May 30, 1975. For a period of five months between May 30 and October 30, 1975, when Shane requested that her charges be considered along with those filed by her co-plaintiffs on August 8, 1975, it appears that no action was taken by the EEOC on her complaint. Nor is it evident why the EEOC could not have begun an investigation into Shane's charges after October 30, despite the fact that the identity of the August 8th complainants was then unknown. Similarly, I find that defendants' contentions regarding plaintiff Brady, taken as true, do not amount to a frustration of the administrative processes requiring dismissal of her charges. See note 7, *supra*.

 It is unnecessary to evaluate defendants' allegations regarding the seven remaining plaintiffs. Having found that at least two (Lo Re and Shane) and perhaps three (Brady) plaintiffs properly initiated this suit, it is clear that it was not necessary for the remaining plaintiffs to have filed charges with the EEOC to join as co-plaintiffs in a class action so long as "they are in a class [with the EEOC charging parties] and assert the same or some of the issues." *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968). See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Jones v. United Gas Improvement Corp.*, 383 F.Supp. 420 (E.D.Pa.1974); *Leisner v. New York Telephone Co., supra*, 358 F.Supp. at 362 n. 1; *Hecht v. Cooperative for Amer. Relief Everywhere, Inc., supra*, 451 F.Supp. at 309. However, since the filing of

**10.** A number of cases have held that receipt of a right-to-sue notice subsequent to the filing of suit "cures" any initial jurisdictional defect. See *Berg v. Richmond Unified School Dist.*, 528 F.2d 1208, 1212 (9th Cir. 1975), and cases cited therein. The Supreme Court recently granted certiorari in *Berg* on this issue. See 429 U.S. 1071, 97 S.Ct. 806, 50 L.Ed.2d 788 (1976). As to the other seven plaintiffs, the court finds it unnecessary to decide whether their filing suit prior to the receipt of right-to-sue notices

would be a jurisdictional defect had they brought suit individually. Similarly, the court finds it unnecessary to decide the effect of the fact that these seven plaintiffs brought suit before the expiration of the 180 day period required by 42 U.S.C. § 2000e–5(e)—an issue upon which the courts also appear to be divided. See *Weise v. Syracuse University, supra*, 522 F.2d at 412; *Budreck v. Crocker National Bank, supra*, 407 F.Supp. at 638, and cases cited therein.

charges with the EEOC serves the dual purpose of providing notice to the charged party and giving the EEOC an opportunity to bring about voluntary conciliation, not only must co-plaintiffs (who have not met Title VII's jurisdictional requirements) allege claims similar to those of the EEOC charging parties but the claims in the complaint must be within ". . . the 'scope' of the EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). In the present case plaintiff Shane raised a "broadside attack" alleging discrimination in "the terms and conditions of employment," in defendants' policies regarding promotion, and charging harassment in retaliation for her charges of discrimination. Plaintiff Brady also alleged retaliatory tactics and charged that defendants discriminate in the area of pay and promotion. Similarly, Lo Re's complaint to the EEOC charged discriminatory hiring practices and alleged defendants refused to hire her in retaliation for her protests against such discrimination. The gravamen of the charges made before the EEOC and those alleged in plaintiffs' complaint is, then, essentially the same claim: that defendants carry out a policy of discrimination generally aimed at women seeking or holding managerial, official, or professional positions (such positions were at issue in each plaintiff's case) and which includes inequalities in pay and retaliation against those who seek to protest. Compare *Leisner v. New York Telephone Co., supra* ;

*Hecht v. Cooperative for Amer. Relief Everywhere, Inc., supra.* Because I conclude, *infra,* that class certification is appropriate in this case, and because it appears that the State Division and the EEOC have had an adequate opportunity to correct the general policy of discrimination charged in the complaint, "those affected by such general policies should be able to seek judicial relief." *Leisner v. New York Telephone Co., supra,* 358 F.Supp. at 375. Accordingly, I find that plaintiffs Robbins, Messeca, Lee, Schwering, Ordano, Stephens-Solomon, and Foster can appropriately join as co-plaintiffs without regard to their ever having filed charges with the EEOC; the Court finds it unnecessary to determine whether the circumstance surrounding their charges, considered independently of the class action, would require dismissal of their claims.[11] To hold that these plaintiffs' claims should be dismissed because they obstructed administrative investigation into their claims, as defendants request, would be to penalize them for failing to facilitate procedures which were unnecessary in the first instance and which had already proved futile.

■ Finally, defendants contend that insofar as Lo Re's charges are based on events taking place on January 11, 1973, such charges are time-barred by 42 U.S.C. § 2000e–5(e),[12] since her charges were filed with the EEOC (on August 7, 1973) more than 180 days after the alleged unlawful practice occurred. Defendant interpret the language "initially instituted" to mean that

11. Although the court has indicated that plaintiff Brady independently met the jurisdictional requirements of Title VII, even were this error, Brady could still join as a co-plaintiff as her claims are encompassed within those of plaintiff Shane.

12. 42 U.S.C. § 2000e–5(e) reads as follows:
(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlaw-

ful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

in order for an individual to take advantage of the extended 300 day limitations period, an individual must file their charges with the State Division before filing with the EEOC. This interpretation is flatly inconsistent with the Supreme Court's holding in *Love v. Pullman Co., supra.* The words "initially instituted" simply mean that the state agency must be given the first opportunity to act on the complaint (as was the case here) and not that the fortuity of filing first with the EEOC will deprive the unwitting complainant of the extended statute of limitation. *See Doski v. M. Goldseker Co.,* 539 F.2d 1326, 1330 (4th Cir. 1976). This Court has already indicated its disagreement with defendants' second argument—that the 300 day limitation period only applies if the complainant has filed with the EEOC or the State Division within 180 days of the alleged unlawful occurrence. *Grogg v. General Motors Corp.,* 72 F.R.D. 523 (S.D. N.Y.1976). Indeed, I agree with the reasoning of the Fourth Circuit in *Doski, supra*: the language of the statute, the relevant EEOC regulations, and proper interpretation of Congressional intent indicates that in states with authorized local agencies the limitations period is 300 days from the EEOC filing (at least where there is no shorter state statute of limitations). The statute of limitations for claims arising under the New York Human Rights Law is one year. N.Y.Exec.L. § 297.5. Thus, in this case there is no danger of complainants evading state supervision by waiting out a short state statute of limitations and then filing with the EEOC. *See Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. 1975).

Independently of this construction, the court rejects defendants' attempt to separate Lo Re's receipt of the January 11, 1973 letter addressed to "Ms. Lo Re" (outside the 180 day period) and the events which led to her final rejection for employment in March (within the 180 day period). These events beginning with the receipt of a January 5, 1973 letter informing "Mr. Lo Re" of job openings, including Lo Re's protests of sex discrimination, and culminating in her final March rejection obviously are part of what

is alleged to be a continuing pattern of discriminatory treatment and fall readily within the "continuing violation" doctrine. *See Stroud v. Delta,* 392 F.Supp. 1184, 1189 (N.D.Ga.1975); *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 518 (S.D.N.Y.1973); *Hecht v. Cooperative for Amer. Relief Everywhere, Inc., supra,* 351 F.Supp. at 306 n. 1.

*Class Determination*

■ Whether the present action may be maintained as a class action depends, of course, on a showing that it meets the requirements of Fed.R.Civ.P. 23. It is too well-established to require extensive citation that a class action is the appropriate and logical vehicle for a suit alleging sex discrimination under Title VII. *See,* e. g., *Wetzel v. Liberty Mutual Insur. Co.,* 508 F.2d 239 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975); *Bowe v. Colgate-Palmolive Co., supra.* This does not mean, of course, that a class action is appropriate in every case. Defendants' central objection to class certification is that this case involves an inquiry into the individual situations of each plaintiff; thus, defendants contend that because it may become necessary to examine the individual qualifications and circumstances of each plaintiff there is no common question of law or fact (Rule 23(a)(2)), plaintiffs' claims are not "typical" of the proposed class (Rule 23(a)(3)), and defendants have not acted upon grounds generally applicable to the class (Rule 23(b)(2)).

Turning first to the requirements of Rule 23(a)(2), the Court has already noted that the claims of Brady, LoRe, and Shane, along with those of the seven other plaintiffs who seek to join in this action, all present essentially the same issue—whether CMC and its subsidiaries have engaged in a pattern or practice of discrimination against women in the area of professional, managerial, and official positions. The fact that plaintiffs' complaint involves "particularized allegations" and that hiring and pro-

motion decisions of the sort here hinge upon a variety of "subjective factors" would be true of any case involving professional level employment; such factors cannot serve to immunize discriminatory practices in professional fields from attack on a class basis. *See Senter v. General Motors*, 532 F.2d 511, 529 (6th Cir. 1976); *Piva v. Xerox Corp.*, 70 F.R.D. 378 at 385–87 (N.D.Cal.1975). The common question here is not "whether one individual is better qualified than another, but whether that individual is considered less qualified, not because of his or her own worth, but because of discrimination forbidden by Title VII." *Kohn v. Royall, Koegel & Wells, supra*, 59 F.R.D. at 521. Although there is some support for defendants' position, the majority of the courts of appeals and district courts have taken a liberal approach to the requirements of a "common" question and "typical" claims and have viewed an allegation of a general policy of discrimination to be sufficient to allow joinder of claims alleging different manifestations of that single underlying policy. See *Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir. 1968); *Piva v. Xerox, supra*, 70 F.R.D. 384–87, and cases cited therein. In this respect, it is relevant that in three relatively recent cases in this district, classes similar to the one sought here have been certified. *See Kohn v. Royall, Koegel & Wells, supra* ; *Leisner v. New York Telephone Co., supra* ; *Hecht v. Cooperative for Amer. Relief Everywhere, Inc., supra.* But see *O'Connell v. Teachers College*, 63 F.R.D. 638 (S.D.N.Y. 1974).

It is questionable whether the Rule 23(a)(3) requirement that plaintiffs' claims be "typical" of those of the class has any meaning independent of Rule 23(a)(2) (common question) or (a)(4) (adequate representation). *See* Moore's Federal Practice, ¶ 123.06–2. In attempting to give meaning to this provision a number of cases have held that it requires would-be class representatives to establish that the existence of a class needing representation is more than a hypothetical situation and that there are, in fact, other individuals with similar grievances. *See*, e. g., *Wright v. Stone Contain-* er *Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1976); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 268–70 (10th Cir. 1975). The factual allegations raised in the complaint and the statistical evidence put forward (which tends to show that women at Chase are segregated into lower-paying positions) certainly demonstrate that plaintiffs' class allegations regarding official, managerial, and professional positions may be based on more than mere speculation. However, plaintiffs seek to represent not only women in management level positions but "all females" who are, have been, or may be employed by the corporate defendants. Such a class would include bank tellers, clericals, maintenance personnel and a multitude of other positions. All of the named plaintiffs were employed in or were seeking professional, managerial, or official positions and there is simply no indication that there is a class of individuals in lower graded positions who suffer from discrimination. *Cf. Kinsey v. Legg, Mason & Co., Inc.*, 60 F.R.D. 91, 99 (D.D.C.1973); *O'Brien v. Shimp*, 356 F.Supp. 1259 (N.D.Ill.1973).

Assuming that such a class does exist, however, the Court finds that the present plaintiffs could not adequately represent their interests. Rule 23(a)(4) requires that the would-be class representative must "fairly and adequately" protect the interests of the class. The Second Circuit has identified three factors which must be considered in deciding this issue: (1) whether plaintiffs' counsel is competent and able effectively to conduct the litigation; (2) whether there is collusion between the class representatives and the defendant employer; and (3) whether the interests of the named representatives are co-extensive and not antagonistic to the remainder of the class. *Eisen v. Carlisle & Jacqueline*, 391 F.2d 555 (2d Cir. 1968). While there is no evidence of collusion and it appears that counsel for plaintiffs can adequately represent her clients (issues which are not contested by the defendants), defendants correctly point out that none of the plaintiffs have indicated any identity of interest with the mass of women in lower-grade positions

(aside from those seeking promotions) who would make up a large proportion of the proposed class. Thus, there has been no demonstration of any "nexus" between Brady, Lo Re, Shane, or any of the other plaintiffs and individuals not seeking or holding managerial, official, or professional positions. *See Wells v. Ramsey*, 506 F.2d 436 (5th Cir. 1975); *Piva v. Xerox, supra*, 70 F.R.D. at 388. It is obvious that the interests of clericals, tellers, secretaries, and other employees may not be co-extensive with (and, indeed may be antagonistic to) those who are, have been, or seek to become their superiors; this is so even though all may be suffering from discrimination based upon their sex. Accordingly, the Court will limit certification of the class to all females who are now employed, have been employed, or have sought employment with the corporate defendants in official, managerial or professional positions and who have been, continue to be, or would be adversely affected by the discriminatory practices alleged. The class shall not include individuals whose claims arose prior to 300 days prior to August 7, 1973.[13] The Court finds (and defendants do not argue to the contrary) that the class as so limited is so numerous as to make joinder impracticable. Fed.R.Civ.P. 23(a)(1).

The defendants' remaining arguments are without merit. The class action properly falls within Rule 23(b)(2). Defendants' claim that there have been no acts "generally applicable" to the class because each plaintiff's charges turn upon a number of subjective factors unique to her situation is merely a rehash of defendants' arguments regarding the requirements of Rule 23(a)(2) and (3). Plaintiffs allege that CMC has directed a policy designed to deter and prevent women from reaching and maintaining management level positions and that such policy has been implemented by the other defendants. If this is true, declaratory and injunctive relief would be appropriate for the class as a whole. *See, e. g., Hecht v. Cooperative for Amer. Relief Everywhere, Inc., supra*, 351 F.Supp. at 311; *Leisner v. New York Telephone Co., supra*, 358 F.Supp. at 373. Further, it is well-established that where both injunctive relief and back-pay are sought in a class action, the class may properly be certified under Rule 23(b)(2), and back-pay awarded. *See Wetzel v. Liberty Mutual Ins. Co., supra*, 508 F.2d at 250–53, and cases cited therein; *Grogg v. General Motors, supra*, and cases cited therein. Should it appear that the equitable relief sought does not predominate, the Court will entertain a motion to alter the certification pursuant to Rule 23(c)(1). *See Grogg v. General Motors Corp., supra*; *Nicodemus v. Chrysler Corp.*, 12 FEP Cases 1265, 1267 (N.D.Ohio 1974); but see *Wetzel v. Liberty Mutual Ins. Co., supra*. Whether or not defendants' "affirmative action program" will obviate the need for injunctive relief is a question that goes to the merits and is not relevant to the question of whether class certification is appropriate. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Finally, defendants' claim that any class certified should be limited to plaintiffs' demands for general, class-wide declaratory and/or injunctive relief is flatly inconsistent with the Supreme Court's holding in *Albemarle Paper Co. v. Moody, supra*. There the court declared that the central purposes of Title VII were to eradicate discrimination throughout the economy and to make whole the victims of past discriminations; the court then stated that given a finding of unlawful discrimination, back pay should be denied "only for reasons [which], if applied generally, would not frustrate" either of these central purposes. 422 U.S. at 421, 95 S.Ct. at 2373. Although I certainly appreciate the defendants' concern with making this litigation manageable, this can be done without frustrating

13. The court notes defendants' argument that a 180 day statute of limitations should apply because none of the plaintiffs "initially instituted" proceedings with the State Division (i. e., they filed first with the EEOC). For reasons elaborated upon earlier, I find this argument to be without merit.

the statutory design.[14] Although the order herein would appear to substantially diminish the size of the class (which plaintiffs estimated at 10,000 women), it is obvious that the remaining members, without regard to those who may seek future employment, could easily number in the hundreds. Although the defendants' suggestion that the class be further subdivided is premature, should further discovery indicate that the interests of some class members might be better represented if treated as a subclass, or if such treatment might otherwise materially aid the advancement of this litigation, the Court will entertain a motion for such appropriate relief under Rule 23(c)(4).

Defendants' motion to dismiss is denied. An order will be settled on 10 days notice in accordance with the foregoing opinion.

---

**14.** For example, I might consider bifurcating the action into two phases: in the first, the court would determine the issues of class liability and injunctive relief; in the second phase, the issue of back pay could be dealt with. Matters might further be expedited by referring certain issues (such as back pay in individual cases were liability found) to a special master. Compare *Piva v. Xerox*, supra, 70 F.R.D. at 390.