Robert **FERGUSON**, Plaintiff,

v.

**MOBIL OIL CORPORATION**, William **F. Seitter** and **Petroleum Trades Employees Union**, Defendants.

No. 76 Civ. 4339–CSH.

United States District Court, S. D. New York.

Jan. 24, 1978.

ternative, dismissing a portion of the complaint. This Court has determined that for the reasons stated herein, there is no subject matter jurisdiction with regard to a portion of said complaint and consequently that particular claim must be dismissed. However, the remainder of the complaint warrants retention and accordingly Mobil's motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

After having worked for Mobil for almost ten years the plaintiff was discharged on or about November 26, 1973. Prior to this discharge there appear to have been several instances where the plaintiff had been disciplined by the defendant via suspension and/or fines for allegedly violating various employment regulations.[1] The plaintiff later contended in his charge before the Equal Employment Opportunity Commission ("EEOC") that these instances and the November 1973 discharge were the products of false charges and discriminatory treatment on the part of Mobil due to plaintiff's race.

Plaintiff filed charges with the EEOC on November 11, 1974 and with the New York State Division of Human Rights on December 2, 1974 alleging his discharge was due to his race and that the predischarge treatment was unfair and similarly due to his race.

Robert Ferguson, pro se.

Geoffrey A. Smith, Scarsdale, N. Y., for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant Mobil Oil Corporation ("Mobil") has moved pursuant to Fed.R.Civ.P. 8(a), 12(b)(1) and 12(b)(6) for an order dismissing the entire complaint or, in the al-

On or about April 18, 1975 the New York State Division of Human Rights ordered that the plaintiff's charge be dismissed and this order was affirmed on March 14, 1977 by the New York State Human Rights Appeal Board. On or about May 20, 1976 the EEOC dismissed plaintiff's charge, finding no reasonable cause and on May 24, 1976 plaintiff received his Notice of Right to Sue.

---

1. Attached to plaintiff's submissions in opposition to this motion is a copy of the form filed with the EEOC by plaintiff on November 11, 1974. This form contains mention of several of the incidents referred to by Mr. Ferguson.

They include, *inter alia,* allegations of receiving pay for jury duty while not actually serving thereon, excessive absences due to illness, repeated tardiness, and failure to produce a doctor's note regarding absence for illness.

The complaint in this action was filed *pro se* on September 30, 1976, averring jurisdiction in this Court on the basis of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The gravamen of the complaint consists of a) unfair discrimination in the plaintiff's November 1973 discharge by Mobil and b) a "blacklisting" charge which reads as follows:

"Following my discharge by the Mobil Oil Company in 1973 I sought employment or was employed by three (3) other oil companies. However, as a direct result of information supplied by the Mobil Company or by its Terminal Manager, William F. Seitter, I was discharged from two (2) of these positions and rejected for employment with regard to the third. These acts have resulted in my current unemployment and have in affect [sic] 'black listed' me in the trade." Complaint ¶ 9.

Mobil has previously moved for a dismissal of the action as being untimely filed. That motion was denied by this Court and a memorandum opinion explaining said denial was issued on May 4, 1977. *Ferguson v. Mobil Oil Corp.,* 76 Civ. 4339–CSH (S.D.N. Y.1977).

## DISCUSSION

### I.

■ The grounds propounded by Mobil in the instant motion as warranting a dismissal of the entire action suggest that the plaintiff's allegations are so ambiguous and conclusory that the defendants cannot reasonably be expected to formulate responsive pleadings, citing *Edwards v. North American Rockwell Corp.,* 291 F.Supp. 199 (C.D.Cal.1968).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain state-ment of the claim showing that the pleader is entitled to relief." In *Edwards* the court, addressing this particular issue, characterized the claims as "purely conclusory in nature and do not provide the defendant with even an abbreviated factual summary" which led to the result that the "defendant cannot properly or safely prepare a responsive pleading." 291 F.Supp. at 212.

That situation has not recurred here. Although, as the defendant points out, any specific discriminatory behavior other than the discharge and the "blacklisting" is not averred in the *complaint,* the defendant is in no sense prejudiced thereby to the point it cannot adequately respond, as was the case in *Edwards.* In the charge filed with the EEOC, the plaintiff referred to at least six (6) instances of discipline received when it was alleged the penalty would have been less severe were the plaintiff a white employee. These instances would appear to be potential elements of the proof to be proffered by Mr. Ferguson as to the discrimination in his discharge. Moreover, when combined with the requisites of a Title VII *prima facie* case, see *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[2] the defendant clearly has adequate notice of the factual premises in the case brought herein, see *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Although the *McDonnell Douglas* elements do not govern in every Title VII action, they provide an adequate signal to the parties regarding what the plaintiff must prove.

■ Additionally, the fact that this action was brought, and is being conducted, *pro se* requires that the "charges are to be construed broadly [and] in a liberal manner in order to effect the 'remedial and humani-

---

**2.** The *prima facie* case in *McDonnell Douglas* compelled a complainant to prove:

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from per-

sons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824.
The Court was careful to note, however, that such a specification would vary according to the facts in each case. 411 U.S. at 802 n. 13, 93 S.Ct. 1817. Obviously in this case the requirements differ because this is a discharge not a failure to hire.

tarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme.'" *Equal Employment Opportunity Commission v. Western Publishing Co., Inc.,* 502 F.2d 599, 602–03 (8th Cir. 1974), quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir. 1970).

Consequently this Court has determined that the complaint is sufficiently specific to avoid a dismissal of the entire action at this juncture and that the Court thus has subject matter jurisdiction over the Title VII allegations and any claims properly "pendent" thereto. See *Almenares v. Wyman,* 453 F.2d 1075, 1084 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

## II.

The defendant has also moved in the alternative for a dismissal of the "blacklisting" claim forwarded by the plaintiff. The propriety of such a dismissal turns on a) whether it may be included now in this Title VII action as an "unlawful employment practice" and, if that question be answered in the negative, b) whether it may be retained as a "pendent" claim. The following discussion will first address the Title VII viability and then the pendent jurisdiction theory.

### Maintenance of the "blacklisting" claim under Title VII

There would appear to be two distinct theories which bode against the maintenance of this allegation under Title VII. The first is that assuming "blacklisting" could amount to a Title VII act of discrimination, it cannot be raised here because it was not included in the charge filed before the EEOC. The second is that the blacklisting averred herein is simply not a Title VII transgression.

### A.

█ The defendant argues that this Court lacks subject matter over the "blacklisting" allegations because they were not included in the charge submitted to the EEOC. In developing this assertion the defendant points out that the EEOC inves-

tigation was restricted to the parties' actions up to and including the discharge, that body having never entertained any facts regarding post-discharge behavior by Mobil or Mr. Ferguson. This being the case, Mobil submits the attaching of such allegations to the Title VII action is impermissible.

The defendant's argument is well taken. It is clear that this Court can take cognizance of averments of discrimination which are "like or reasonably related to the allegations of the charge [submitted to the EEOC] and growing out of such allegations," *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 522 F.2d 1235, 1241 (7th Cir. 1975) *quoting Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir. 1971); see *Equal Employment Opportunity Commission v. National Cash Register Company,* 405 F.Supp. 562, 566 (N.D.Ga.1975); *Scott v. University of Delaware,* 385 F.Supp. 937, 942 (D.Del.1974); cf. *Equal Employment Opportunity Commission v. Bailey Co., Inc.,* 563 F.2d 439, 446 (6th Cir. 1977). However, the "blacklisting" claim at issue here cannot be so construed. This claim was never the subject of any discussion or investigation by the EEOC or the parties before it, demonstrating no notice thereof to the defendant and no reasonable relation to the charges investigated. The absence of such an opportunity to discuss such claims has been cited as the reason such claims cannot be addressed in judicial actions. *Bailey, supra,* 563 F.2d at 448.

The plaintiff nevertheless contends such behavior "reasonably grows out of the fact that he was a victim of disparate treatment by Mobil." This Court has determined, however, that such is not the case. The requisite nexus is not here. The other allegations of Mr. Ferguson's complaint focus solely on the employment relationship experienced by the parties and the averred misconduct which occurred therein, including the discharge. The "blacklisting" averment involves only that period *after* said employment when the employer/employee status, and its concomitant rights and duties, had expired and an entirely different legal context had arisen. Not only do the two periods involve distinct factual theatres, but

also distinct legal obligations only the earlier of which was before the EEOC. Clearly the charges before the EEOC never gave Mobil any of the notice the Title VII scheme and due process mandates, see *Bailey, supra,* 563 F.2d at 450. The "blacklisting" claim consequently creates a "material difference" between the claim filed with the EEOC and the one at bar, see *Danner, supra,* 447 F.2d at 162; compare *Scott, supra,* 385 F.Supp. at 942–43 (expanded claim "properly within the scope of an EEOC investigation").

"[T]he judicial complaint may not allege unlawful employment practices, which were the subject neither of the EEOC's investigation, nor of its 'reasonable cause' determination." *National Cash Register, supra,* 405 F.Supp. at 566 (citation omitted). Thus, assuming arguendo that the "blacklisting" claim could properly be brought in a claim of "unlawful employment practices" under Title VII filed with the EEOC,[3] this claim cannot be properly retained in this Court.

"Where, as here, an attempt is made to include in the Complaint allegations other than those contained in the Charge filed with the EEOC, the action must be treated as one brought without previous resort to the EEOC. In this situation the courts have uniformly dismissed the complaint." *Edwards, supra,* 291 F.Supp. at 204.

Accord, *Bailey, supra,* 563 F.2d at 446–49; *Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 193 (S.D.N.Y.1977); *Equal Employment Opportunity Commission v. Winn-Dixie, Inc.,* 11 CCH Employment Practices Decisions (EPD) ¶ 10,945 (E.D.La. 1976); *National Cash Register, supra,* 405 F.Supp. at 566–67; *Equal Employment Opportunity Commission v. J. C. Penney Co., Inc.,* 11 EPD ¶ 10,660 (S.D.Miss.1975); *Equal Employment Opportunity Commission v. Griffin Wheel Co.,* 11 EPD ¶ 10,809 (N.D.Ala.1975). See also *Looney v. Commercial Union Assurance Companies,* 428 F.Supp. 533, 535 n.3 (E.D.Mich.1977).

This orientation of the courts is not a "matter of placing form over substance", but results from the recognition that conciliation via the efforts of the EEOC is preferred to invoking the relief available in the federal courts. See *Bailey, supra,* 563 F.2d at 449; *Edwards, supra,* 291 F.Supp. at 203–04.[4]

Accordingly, having determined that the "blacklisting" claim neither grows out of the alleged discriminatory discharge nor is sufficiently similar to said discharge to warrant inclusion therewith, it is concluded such a claim cannot be retained under a jurisdictional foundation consisting solely of Title VII. As is discussed *infra,* any theory of possible retention via "pendent" jurisdiction is equally unavailing and thus the claim must be dismissed.

### B.

An alternative basis for divorcing the "blacklisting" claim from the residual Title VII action would appear from the recognition that such behavior is not an "unlawful employment practice" within the

---

3. Section 706 of Title VII, 42 U.S.C. § 2000e–5 gives the EEOC the breadth in the scope of any investigation regarding "unlawful employment practice[s]" equal with that of this Court insofar as any employer-violation under § 2000e–2(a) is concerned. Thus it cannot be argued that such a claim could not properly be a Title VII claim before the EEOC while it *would* be a proper Title VII claim in this Court.

4. It should be noted that one of the petitioners in the *McDonald* case had lost one of his Title VII claims in the district court because he had failed to file such a charge with the EEOC. *McDonald, supra,* 427 U.S. at 277, 96 S.Ct. 2574. Unfortunately, however, the Supreme Court did not pass on the validity of this dismissal because it was not an issue presented

for review therein on certiorari. 427 U.S. at 277 n. 1, 96 S.Ct. 2574. Consequently the Court only reinstated that petitioner's Title VII claim which *had* been presented to the EEOC. 427 U.S. at 285, 96 S.Ct. 2574.

We also acknowledge the factual difference between the cases cited in the text on this point insofar as some have the EEOC as the plaintiff and others have the individual complainants. However, in view of the congressional preference for conciliation instead of judicial resolutions which was noted in the text being applicable to both categories, the distinction between the cases would not appear to warrant a different approach to the requirement of filing before the EEOC as a condition precedent to a civil action.

admittedly broad scope of such a term as defined by the statute and interpreted by the courts. If such be the case, then the claim can only be maintained under a "pendent jurisdiction" theory. It is recognized herein, of course, that the plaintiff's material averments are accepted as true. See *McDonald, supra*, 427 U.S. at 276, 96 S.Ct. 2574.

Activities by an employer which are proscribed by Title VII [5] have had ample attention by the Supreme Court. See e. g. *McDonald, supra*, 427 U.S. 273, 96 S.Ct. 2574; *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas, supra*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). However, as the court in *Edwards* noted:

> "[W]hile the prohibitions are obviously quite broad, it remains clear that not every action of the employer and not every employee discontent is cognizable under Title VII." 291 F.Supp. at 214.

Plaintiff here does not allege in his complaint that the "blacklisting" is itself an act of discrimination against him on the part of Mobil. Nor can such activity fit within the terms of Section 703(a) or (d) of Title VII, 42 U.S.C. 2000e–2(a), (d); see note 5 in the margin. This conclusion evolves from the realization that although such behavior is obviously reprehensible and probably tortious, it is clearly not discriminatory. Rather, it would appear more closely analogized to the state law claims of "slander" and "tortious interference with an employment relationship," see *Kletschka v. Driver*, 411 F.2d 436, 450 (2d Cir. 1969).

It would also appear that the factual positions of the parties after the plaintiff's discharge were not such as to give rise to a violation of Title VII under the expansive interpretations of the courts because defendant's conduct in no way could constitute an "employment practice", as required by the statute.[6]

Thus the *Griggs* line of authority is also inapposite. It held that any "practices, procedures, or tests neutral on their face, and even neutral in terms of intent [are actionable under Title VII], if they operate to 'freeze' the status quo of prior discriminatory employment practices." *Griggs, supra*, 401 U.S. at 430, 91 S.Ct. at 853; see *Acha v. Beame*, 570 F.2d 57 (2d Cir. 1978). Under this approach if a qualification or test has an exclusionary impact on a minority group, it can be an "unlawful employment

---

**5.** Prohibitions applicable to employers and contained in Title VII include the following:

> "(a) It shall be an unlawful employment practice for an employer—
> "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> "(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
> \*    \*    \*  ·    \*    \*    \*
> "(d) It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individ-

ual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e–2.

**6.** Indeed, even if such post-employment tortious conduct could be construed as potentially within Title VII, it has not been alleged nor is there any reasonable basis to infer that race was a cause-in-fact of such behavior, see *McDonald, supra*, 427 U.S. at 282 n. 10, 96 S.Ct. 2574. Plaintiff's pleadings on this element of racial discrimination underlying the blacklisting would appear insufficient to permit an inference of racial motivation, even under the lenient standard the Supreme Court has permitted. See *McDonald, supra*, 411 U.S. at 283 n. 11, 96 S.Ct. 2574. Simply said, the act must be discriminating in intent or effect, and if only in effect it must be a "practice or policy", see *McDonnell Douglas, supra*, 411 U.S. at 800–01, 93 S.Ct. at 1823. ("Discriminatory preference for any group . . . is precisely and only what Congress has proscribed.")

practice" under Title VII, see *McDonnell Douglas, supra,* 411 U.S. at 802 n. 14, 93 S.Ct. 1817; *Townsend v. Nassau County Medical Center,* 558 F.2d 117, 119 (2d Cir. 1977).

In this case, while an exclusionary impact is readily apparent from any "blacklisting", such conduct is manifestly not a "practice, procedure or test" which is applied to any group, see *United States v. N. L. Industries, Inc.,* 479 F.2d 354, 360 *et seq.* (8th Cir. 1973). Rather, the allegations here depict isolated tortious acts (numbering about three) directed at and affecting only a particular individual. This simply is not a "policy"; it is slander or "tortious interference with an employment relationship", as mentioned above.[7]

Accordingly it is the conclusion of this Court that the "blacklisting" allegation is not, under this case's facts, a claim cognizable under Title VII and consequently cannot be maintained in this action unless properly determined as "pendent" to the claims remaining in this case under Title VII.

### III.

*Maintenance of the "blacklisting" claim as pendent to the federal claims*

■ The landmark Supreme Court case regarding pendent jurisdiction is *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The criteria set forth in the *Gibbs* opinion amounted to three. Although the two discussed herein seem to overlap, the absence of any requirement results in a lack of power in the federal court to hear the particular claim. Justice Brennan's oft-quoted opinion for the Court on this question is as follows:

"Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under this Authority . . . ,' U.S.Const., Art. III, § 2, and the relationship between

that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original, footnotes omitted).

These requirements are considered cumulative, 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Jurisdiction § 3567 at 445 (1975) (hereinafter cited as "Wright & Miller"); see also *Almenares v. Wyman, supra,* 453 F.2d at 1083.

It would appear beyond cavil and has been established *supra* in this action that the federal claims are sufficient to create subject matter jurisdiction. Therefore this "pendent" issue turns on the following questions: 1) whether the "blacklisting" and Title VII claims "derive from a common nucleus of operative fact" and, 2) whether the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138; *Almenares, supra,* 453 F.2d at 1083; Wright & Miller § 3567 at 445. Although there would appear to be a tendency toward similar answers in most cases, if either of these questions are answered in the negative pendent jurisdiction under *Gibbs* is not established. They are addressed separately *infra.*

With regard to the "common nucleus of operative fact" test, it would appear the state and federal claims do not portray any common *operative* facts. The proof or op-

---

7. This discussion is not intended to intimate any view as to whether or not plaintiff's allegations of "blacklisting" are well founded.

erative facts in the Title VII claim involve only those events occurring during the plaintiff's employment and discharge and a comparison with similarly-situated white employees. The operative facts of the "blacklisting" claim revolve solely around approximately three communications by the defendant after the discharge and the events produced thereby. In the "blacklisting" charge the prior employment relationship and any discriminatory motive are not in issue, while they may be crucial to the Title VII claim. Additionally, to the extent any proof regarding the relief available is at issue (see discussion *infra*), these facts also display demarcation along the same line drawn between the operative facts on liability. Compare *Glover v. City of New York*, 401 F.Supp. 632, 636 (E.D.N.Y.1975).

The failure to make such a distinction between a defamation claim and federal claims which involved the same parties prompted the Third Circuit Court of Appeals to reverse the retention of the state claim. *PAAC v. Rizzo*, 502 F.2d 306, 312–13 (3d Cir. 1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). In *PAAC* the distinction between the claims' operative facts was not as clear as in the instant case where the timing so obviously divorces the two claims. Similarly, distinctions have been found in the following cases: *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 847–48 (4th Cir. 1974); *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 718 (S.D.N.Y.1976) (Weinfeld, J.); *Sun Enterprises, Ltd. v. Train*, 394 F.Supp. 211, 224 (S.D.N.Y.1975), *aff'd*, 532 F.2d 280 (2d Cir. 1976); *Petersen v. Federated Development Company*, 387 F.Supp. 355, 360 (S.D.N.Y. 1974); see also *Corum v. Beth Israel Medical Center*, 359 F.Supp. 909, 916 (S.D.N.Y. 1973). Consequently this Court has concluded the Title VII and "blacklisting" claim do not "derive from a common nucleus of operative fact."

The second requirement from *Gibbs* is the question whether the plaintiff "would ordinarily be expected to try [all his claims] in one judicial proceeding." *Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138. This criterion has been interpreted as a reference to what matters would come within the scope of *res judicata* if the claims were all federally or all state created, Wright & Miller § 3567 at 445; see discussion in *Gibbs*, 383 U.S. at 723, 86 S.Ct. 1130.

It is clear that the "blacklisting" claim cannot be considered within the same "constitutional case", *Gibbs, supra*, 383 U.S. at 725 & n. 12, 86 S.Ct. 1130, or ordinarily to be tried in the same judicial proceeding with the Title VII claim. Although the claims involve the same plaintiff and defendant, the legally-significant similarity ends there. The Title VII is a federal statutory right whose relief is only "equitable" including, *inter alia*, reinstatement and back pay but not compensatory or punitive damages, *Flores v. Local 25, International Brotherhood of Electrical Workers*, 407 F.Supp. 218, 220 (E.D.N.Y.1976); see *Johnson v. Railway Express Agency*, 421 U.S. 454, 458 n. 5 and 461, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) and in connection therewith there is no right to a jury trial, *Flores, supra*, 407 F.Supp. at 220; see discussion in *Curtis v. Loether*, 415 U.S. 189, 196–98, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). This is in keeping with the congressional purposes underlying the creation of Title VII: to prohibit inequality in employment opportunities due to discrimination and to make persons whole on account of violations thereof. *Franks v. Bowman Transportation Company*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

The "blacklisting" claim on the other hand, as was seen above, would appear actionable under state-defined theories of slander or tortious interference with an employment relationship which are *legal* actions, triable by a jury, with relief in the form of compensatory and perhaps punitive damages, not reinstatement or back pay per se.[8] The liability under these theories in no way hinges on the considerations Congress might have recognized as relevant in Title VII actions, such as the typical disparity of resources available to an employer and those available to an employee in conduct-

---

8. See *Turano v. Board of Education*, 411 F.Supp. 205, 212 n. 5 (E.D.N.Y.1976).

ing litigation. Neither is a racially discriminatory motive germane to such actions while it may be in Title VII, see *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. 1817.

In cases such as *Gibbs* or *Kletschka,* 411 F.2d 436, where the state claims were found to be pendent, it was clear that the proof of the federal claim would necessarily consume a substantial portion of any proof required under the state claims, see e. g. *Kletschka, supra,* 411 F.2d at 449–50. As has been shown, this is not such a case.

Accordingly it is determined that the "blacklisting" claim is not properly "pendent" to plaintiff's Title VII claim under the criteria from *Gibbs* and consequently, being without pendent jurisdiction in that claim, I do not reach the decision whether to retain the claim in my discretion. See *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. 1130; *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1254 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Kletschka, supra,* 411 F.2d at 450.

If, however, jurisdiction could have been established and such a discretionary decision had arisen, then the considerations noted in this Opinion would oblige this Court to decline to exercise jurisdiction. See *Petersen, supra,* 387 F.Supp. at 360; *Corum, supra,* 359 F.Supp. at 916.

## CONCLUSION

The "blacklisting" claim cannot be maintained in this action due to the lack of subject matter jurisdiction in this Court and, accordingly, that claim must be dismissed.[9] The Title VII claims, however, remain and defendant's motion to dismiss as it relates to said claims must be denied. The parties are directed to notify the Court by mail within twenty (20) days of this Order as to their respective readiness to proceed to trial.

It is So Ordered.

---

**9.** The dismissal is, of course, without prejudice. Wright & Miller, *supra,* at § 3567, p. 453.